UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRENDA DRERUP. | § | |
| | § | |
| Plaintiff. | § | CIVIL ACTION NO. |
| | § | |
| vs. | § | 2:19-cv-00106-D |
| | § | |
| CONSOLIDATED NUCLEAR | § | |
| SECURITY, LLC. | § | |
| | § | |
| Defendant. | § | |

**DEFENDANT CONSOLIDATED NUCLEAR SECURITY, LLC'S
REPLY IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Drerup's[1] Brief in Support of her Response to CNS's Motion for Summary Judgment seeks

to distract this Court from the undisputed material facts supporting a grant of summary judgment.

CNS files this Reply to focus this Court on those undisputed material facts and the relevant law,

and requests that the Court grant its Motion for Summary Judgment.[2]

---

[1] Capitalized terms used here have the same meaning as that ascribed to them in CNS's Brief in Support of its Motion for Summary Judgment.

[2] In its contemporaneously filed pleading, CNS objects to the admissibility of many records offered by Drerup in support of her Response. CNS discusses this objectionable evidence for the purposes of its reply only and does not intend to waive its objections. *See Montes v. Cty. of El Paso*, No. EP-09-CV-82-KC, 2010 U.S. Dist. LEXIS 49313, at *7 (W.D. Tex. May 18, 2010) (determining a party does not waive its objections to summary judgment evidence by discussing such evidence in a response brief).

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for
Summary Judgment – Page i**

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

I.    Drerup's claims fail because she did not experience an adverse employment action. ............ 2

    1.    The day-shift Battalion Chief position Drerup has not existed since 2016 and any temporary redistribution of those duties was not an adverse employment action. ......... 2

    2.    CNS's decision to allow Fire Captain Brown and Drerup to each retain their respective duties was not an adverse employment action. .............................................................. 3

II.   Drerup's claims fail because there were legitimate, non-pretextual, nondiscriminatory reasons for all of CNS's employment decisions. ....................................................... 4

    1.    Drerup did not meet the minimum qualifications for the Assistant Fire Chief position. 4

    2.    CNS required Drerup to continue performing her own job duties after November 2017 based on mission needs. ................................................................................... 7

    3.    The day-shift Battalion Chief position was reclassified as a Fire Captain position. ...... 8

    4.    Drerup did not experience an adverse employment action when she did not take the annual Combat Challenge in 2015, 2016, or 2017. ...................................................... 9

III.  Drerup offers speculative lay witness testimony insufficient to establish pretext. .............. 11

    1.    Drerup's suggestion that other employees "felt" Drerup was treated in a discriminatory manner rests on unverifiable speculation. .................................................................. 11

    2.    Drerup's alleged evidence that Chief Brock treated other female employees in a discriminatory manner is based exclusively on inadmissible hearsay. ........................ 12

    3.    Any alleged comments mentioning gender or age were stray remarks. ...................... 13

IV.   Although Drerup made a number of complaints to the Employee Concerns Department, she never experienced an adverse employment action as a result of those complaints. .............. 14

V.    Summary judgment is proper as to Drerup's Americans with Disabilities Act ("ADA") claims. .................................................................................................................. 14

    1.    Drerup does not have a qualifying disability. .......................................................... 14

    2.    There is no reasonable accommodation CNS could provide Drerup that would not cause CNS undue hardship to allow Drerup to act as a Responder. ............................ 16

VI.   Summary judgment is proper as to certain of Drerup's claims because she failed to timely exhaust her administrative remedies. .................................................................... 19

VII. Claims asserted under the Lilly Ledbetter Fair Pay Act fail as a matter of law. ................... 20

CONCLUSION ........................................................................................................................... 20

## TABLE OF AUTHORITIES

*Alvarado v. Texas Rangers*, 492 F.3d 605, 614 (5th Cir. 2007) ...................................... 3

*Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 161 (5th Cir. 2008) . 11, 12

*Belmonte v. City of Dall.*, No. 3:19-CV-2656-G-BK, 2020 U.S. Dist. LEXIS 119818, at *9 (N.D. Tex. June 3, 2020) ........................................................................................................ 19

*Bienkowski v. American Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988) ........................ 3

*Blasingame v. Eli Lilly & Co.*, No. H-11-4522, 2013 U.S. Dist. LEXIS 150461, at *14 (S.D. Tex. Oct. 18, 2013) ...................................................................................................... 20

*Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999)............................................. 17

*Burnley v. City of San Antonio*, No. SA-02-CA-0489 NN, 2004 U.S. Dist. LEXIS 421 (W.D. Tex. Jan. 6, 2004)....................................................................................................... 15

*Champlin v. Manpower Inc.*, No. 4:16-CV-02987, 2018 U.S. Dist. LEXIS 13450, at *8 (S.D. Tex. Jan. 24, 2018)...................................................................................................... 9, 18

*Escalante v. Holder*, No. EP-09-CV-368-KC, 2011 U.S. Dist. LEXIS 42631, at *25 (W.D. Tex. Apr. 20, 2011) ......................................................................................................... 2

*Fortenberry v. Texas*, 75 F. App'x 924, 927 (5th Cir. 2003)............................................. 2, 10, 18

*Garcia v. City of Amarillo*, No. 2:18-CV-95-Z-BR, 2020 U.S. Dist. LEXIS 129629, at *16-17 (N.D. Tex. July 22, 2020) ........................................................................................ 13, 18

*Green v. Hosp. Serv. Dist.*, No. 16-223-SDD-EWD, 2017 U.S. Dist. LEXIS 41241, at *16 (M.D. La. Mar. 22, 2017) ...................................................................................................... 19

*Green v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) ........................ 14

*Harper v. Fort Bend Indep. Sch. Dist.*, No. H-16-1678, 2017 U.S. Dist. LEXIS 70396, at *25 (S.D. Tex. May 9, 2017) ............................................................................................. 9

*Higbie v. Kerry*, Civil Action No. 3:11-CV-2636-L, 2014 U.S. Dist. LEXIS 33240, at *32 (N.D. Tex. Mar. 14, 2014) ..................................................................................................... 2

*Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 960 (7th Cir. 1996) ........................ 15

*Jackson v. Cal- W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010) .................................... 13

*Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1299 (S.D. Tex. 1996) ........................... 12

*Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999)................................................. 12

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page iv**

*Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2013) ...................................... 19

*McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019) ................................................................................................................................ 13

*Milton v. Tex. Dep't of Criminal Justice*, No. H-10-303, 2011 U.S. Dist. LEXIS 145907, at *3 (S.D. Tex. Dec. 17, 2011) ...................................................... 15

*Montes v. Cty. of El Paso*, No. EP-09-CV-82-KC, 2010 U.S. Dist. LEXIS 49313, at *7 (W.D. Tex. May 18, 2010)...................................................................................................................... i

*O'Reilly v. Gov't of the Virgin Islands*, No. 11-0081, 2015 U.S. Dist. LEXIS 84407, at *16-17 (D.V.I. June 30, 2015) .............................................................. 15

*Roe v. Johnson Cty.*, No. 3:18-cv-2497-B-BN, 2019 U.S. Dist. LEXIS 143705, at *15 (N.D. Tex. July 29, 2019) ......................................................................................................... 2

*Spencer v. Fei, Inc.*, 725 F. App'x 263, 267 (5th Cir. 2018) .................................... 7, 10

*Tatum v. S. Co. Servs.*, 392 F. Supp. 3d 689, 696 (E.D. Tex. 2018)...................................... 11, 12

*Villarreal v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-10-AM/CW, 2019 U.S. Dist. LEXIS 177635, at *10 (W.D. Tex. Sep. 25, 2019) ............................................. 14

*Washington v. Veneman*, 109 F. App'x 685, 687 (5th Cir. 2004) ................................. 13

## INTRODUCTION

Both CNS's Motion for Summary Judgment and Brief in Support (collectively, "Motion") and Drerup's Response to CNS's Motion and Brief in Support (collectively, "Response"), make one thing clear: Drerup's claims fail as a matter of law. The most glaring weakness in Drerup's lawsuit is the lack of a viable adverse employment action. Drerup was not terminated or even demoted. She continues to earn a six-figure income as a Fire Captain and is not even required to work in the Fire Department building, a facility she believes is not sufficiently clean. So instead, Drerup makes scattered complaints that she did not receive a host of job duties and jobs she prefers to her own. Drerup was not qualified for some of these jobs. Some require her to be present in the Fire Department building, which she says she cannot do. She did not apply for others. One of these jobs has not even existed for years. And there is not one stitch of evidence that discrimination or retaliation played any role in CNS's decisions related to any of these job duties or jobs.

To distract from the legal deficiency of her claims, in her Response, Drerup at length discusses two events for which she does not, and cannot, seek recovery in this suit. Specifically, Drerup alleges that she experienced two instances of sexual assault, one in 2000 and another in 2008, involving the same former coworker. Resp. 2-4. These alleged assaults occurred when the Pantex Plant was under the management of an entirely different company.[3] The earlier of the two was not reported to management.[4] Drerup did report the 2008 incident, and the accused employee promptly resigned in lieu of termination.[5] Claims related to these events, which happened approximately 10 and 20 years prior to Drerup filing suit, are time barred.[6] Likewise, as a matter

---

[3] As explained in its Motion, CNS did not become the contractor of the Pantex Plant until July 2014. Defense Nuclear Facilities Safety Board, Pantex, https://www.dnfsb.gov/doe-sites/pantex last accessed on Jan. 13, 2021.

[4] Mot. Ex. 5, Drerup Dep. 50:11-51:8, Appx. 093-094 ("Q. And my recollection is that you did not report the first incident to management but you did report the second incident; is that correct? A. Correct.").

[5] *Id.*; Resp. App'x, Drerup Dep. 54:20-55:1, App 265-266.

[6] Drerup filed her suit on May 14, 2019. Compl, ECF. No. 1. By this time, the statute of limitations related to these events had long expired. *See Roe v. Johnson Cty.*, No. 3:18-cv-2497-B-BN, 2019 U.S. Dist. LEXIS 143705, at *15

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 1**

of law, these events are too remote in time to be causally connected to the employment actions Drerup challenges in the instant case, all of which occurred between 2017 and 2019.[7] These allegations do not raise issues of material fact, rather, they underscore the need for summary judgment. While inflammatory, decades-old claims could potentially rouse the ire of a jury, they cannot rehabilitate a lawsuit that fails as a matter of law.

## I.   Drerup's claims fail because she did not experience an adverse employment action.

> 1.  *The day-shift Battalion Chief position Drerup has not existed since 2016 and any temporary redistribution of those duties was not an adverse employment action.*

Drerup's gender, age, and disability-based discrimination claims arising out of CNS's failure to promote her to the day-shift Battalion Chief position should be dismissed because the position ceased to exist upon the 2016 retirement of Donovan Morgan. Drerup therefore cannot establish a prima facie case as (1) CNS promoted no one to the Battalion Chief rank on day shift, (2) CNS has not left a day-shift Battalion Chief position open, and (2) Drerup never applied for the position. *See Fortenberry v. Texas*, 75 F. App'x 924, 927 (5th Cir. 2003).

Furthermore, CNS's temporary redistribution of Morgan's duties until it could backfill the position (which Drerup characterizes as a "delay in reclassifying Morgan's position") was not adverse to Drerup as she has offered no evidence establishing she experienced any change in pay, status, duties, or work schedule. Resp. 50; s*ee Escalante v. Holder*, No. EP-09-CV-368-KC, 2011 U.S. Dist. LEXIS 42631, at *25 (W.D. Tex. Apr. 20, 2011) ("[T]emporary changes in schedule and added duty assignments similarly do not rise to the level of adverse employment actions.").

---

(N.D. Tex. July 29, 2019) (noting five-year statute of limitations applies for any civil tort claims arising from sexual assault).
[7] *See Higbie v. Kerry*, Civil Action No. 3:11-CV-2636-L, 2014 U.S. Dist. LEXIS 33240, at *32 (N.D. Tex. Mar. 14, 2014) (determining defendant's alleged adverse employment action was "simply too far removed from Plaintiff's protected activity" that occurred seven years prior, thus, "there is no causal link between the two").

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 2**

Thus, her gender, age, and disability discrimination claims related to the day-shift Battalion Chief position should be dismissed.

2. *CNS's decision to allow Fire Captain Brown and Drerup to each retain their respective duties was not an adverse employment action.*

Drerup complains that, in 2017, she should have been able to offload her job duties to a newly promoted day-shift Fire Captain (Josh Brown) so that she could "broaden her horizons and take over special projects and new opportunities." Resp. 46. Although her brief is unclear, these other "special projects and new opportunities" likely refer to the duties assigned to Brown when he took his Fire Captain position. Although Drerup admits she did not experience a loss in compensation when CNS declined to swap their job duties, she offers her opinion that this deprived her of duties that would have been "more prestigious," but proffers no evidence in support of such a claim. *Id*. 46-47. Instead, she relies on the argument of counsel that "[t]he fact that these duties were more prestigious is supported by the fact that they had previously been performed by a [Battalion Chief], that Gleaves and Ho-Gland agreed to let Drerup take over those duties in response to her complaints, and that Chief Brock refused to allow Drerup this opportunity." *Id*. 47. But the evidence establishes that the duties previously performed by Battalion Chief Morgan "could be done by any captain."[8] Moreover, the duties Brown performed in his Fire Captain position did not provide him with more compensation, overtime, training, or travel opportunities than Drerup received in her Fire Captain position.[9] Drerup's subjective beliefs that Brown's duties were more prestigious, without more, cannot create a material fact issue. *See Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507–08 (5th Cir. 1988); *see also Alvarado v. Texas Rangers*, 492

---

[8] Resp. App'x, Brock Dep. 67:12-16, App 209.
[9] Mot. Ex. 6, Hale Dep. 37:19-38:2, Appx. 131-132; Mot. Ex. 7, Gleaves Dep. 134:7-135:2, Appx. 167-168; Ex. 15, Gleaves Decl. ¶ 4, Appx. 296-297; Mot. Ex. 8, Ho-Gland Dep. 80:9-18, Appx. 192; Mot. Ex. 16, Brock Decl. ¶¶ 3-4, Appx. 298-299.

F.3d 605, 614 (5th Cir. 2007) ("[N]either the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion."). Moreover, Drerup appears to admit that Brown's participation as the Health Safety Officer ("HSO"), Safeguards, Security, & Emergency Services Communications ("SSESC") Team member, and Chaplain are not actionable adverse employment actions. Resp. 48 (arguing CNS's selection of Brown as HSO, SSESC Team member, and Chaplain provides only background evidence for her discrimination claims). As a result, Drerup's age, disability, and gender discrimination claims related to this event should be dismissed.

**II.    Drerup's claims fail because there were legitimate, non-pretextual, nondiscriminatory reasons for all of CNS's employment decisions.**

*1.   Drerup did not meet the minimum qualifications for the Assistant Fire Chief position.*

It is undisputed that, at the time she applied for the Assistant Fire Chief position, Drerup did not have the Texas Commission on Fire Protection ("TCFP") Fire Instructor II or TCFP Fire Officer II certifications, or the National Fire Protection Association ("NFPA") equivalent, which were plainly required by the job requisition.[10] As a result, she was not selected to interview for that position. Drerup now contends CNS's asserted legitimate, nondiscriminatory reason for failing to promote her to the Assistant Fire Chief position (that she did not have the requisite minimum qualifications for the position) is pretext because (1) those qualifications were not previously required for the position, (2) Emory Johnson did not have the requisite qualifications when he was interviewed, (3) the Fire Department often allows newly promoted officers the opportunity to acquire minimum certifications between 180 days to one year after their promotion, and (4) Chief

---

[10] Mot. Ex. 4, CNS's Interrogatory Resp. 14, Appx. 079; Mot. Ex. 13, Drerup's Resp. Request for Admission Nos. 1-2, Appx. 237.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 4**

Brock did not an extend an interview to Drerup despite diversity and affirmative action plans in existence at CNS. Resp. 55. But these arguments all ignore one dispositive fact—it was a Human Resources Department employee (Patti Knipp) responsible for determining which applicants had the required minimum certifications, *not* Chief Brock.[11]  Drerup's failure to receive an interview is therefore not evidence that Chief Brock discriminated against her based on her gender, age, or disability or retaliated against her. This decision was not only legitimate and nondiscriminatory, it was not even Chief Brock's decision. Drerup was not on the list of individuals from which Chief Brock selected interview candidates.[12] Moreover, Knipp uniformly required that applicants have all posted qualifications: she determined that several other male applicants were unqualified for the position so their resumes were not forwarded to Chief Brock for the interview process either.[13] This alone defeats Drerup's claimed evidence of pretext.

Nor does any evidence support Drerup's conclusory arguments. First, the evidence is undisputed that qualifications for the Assistant Fire Chief position had been the same for at least two requisitions.[14] Moreover, Chief Brock testified that the minimum qualifications for the position were not altered to prevent Drerup from applying for the position.[15] Second, Johnson testified that he had the NFPA equivalent or higher of all of the minimum qualifications when he applied, and had all of the TCFP certifications when he was interviewed for the position.[16] In contrast, Drerup did not have the TCFP certifications or the NFPA equivalent.[17] Knipp testified similarly.[18] Third, Drerup's Response cites her own (mistaken) belief that CNS allows all officers

---

[11] Mot. Ex. 4, CNS's Interrogatory Resp. 14, Appx. 079; Mot. Ex. 14, Brock Dep. 147:9-11, 13-20, Appx. 283; 151:23-152:3, Appx. 285-286.
[12] Mot. Ex. 4, CNS's Interrogatory Resp. 14, Appx. 079.
[13] Mot. Ex. 14, Brock Dep. 149:2-6, Appx. 284.
[14] Resp. App'x, Brock Dep. 154:8-16, App 230.
[15] *Id.* at 154:21-25, App 230.
[16] Resp. App'x, Johnson Dep. 10:6-11:8, App 096; App 715.
[17] Mot. Ex. 14, Brock Dep. 149:2-6, Appx. 284.
[18] Mot. Ex. 11, Knipp Dep. 8:21-9:5, Appx. 231.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 5**

up to one year after promotion to obtain the requisite minimum certifications for their positions, but this misstates the evidence Drerup offers the Court. With respect to the Fire Captain position, the job requisition provides that a newly promoted officer "[m]ust become certified by the [TCFP] as Fire Officer I within one year."[19] Ho-Gland similarly testified to this fact.[20] No analogous allowance appears in the Assistant Fire Chief requisition.[21] Finally, as set forth above, Knipp, a female Human Resources Department employee, chose not to forward Drerup's resume to Chief Brock after she determined Drerup did not have the minimum qualifications for the job posting. There is not one scintilla of evidence that Knipp had any reason to discriminate or retaliate against Drerup.

Furthermore, even if she had the minimum qualifications (she did not), Drerup could not have performed the essential duties required of the Assistant Fire Chief as she could not (1) step foot in the Fire Department where many of the Assistant Fire Chief's tasks must be performed, or (2) respond to an emergency in any area other than the "cold zone." The Assistant Fire Chief position Drerup sought would have placed her in charge of all firefighting and emergency response activities.[22] Yet Drerup strangely contends she could have performed the duties if she were allowed to attend meetings held within the Fire Department by speakerphone. Resp. 43. She also urges the non sequitur that because Emory Johnson, the individual hired for the Assistant Fire Chief position she sought, had to have an escort while in the Fire Department until he obtained his own security clearance, this is evidence that Drerup could have performed the same duties from a remote location. *Id.* Unsurprisingly, a firefighter's job duties do not lend themselves to teleworking. On top of attending meetings within the Fire Department, the Assistant Fire Chief position Drerup

---

[19] Resp. App'x, App 640.
[20] Resp. App'x, Ho-Gland Dep. 107:9-18, App 184.
[21] Mot. Ex. 2-A, Appx. 39-42.
[22] Resp. App'x, Morgan Dep. 64:10-65:15, App 086-87.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 6**

sought also required that she be able to, among other things, (1) direct "activities of fire department personnel within assigned function"; (2) perform "periodic inspections to ensure efficient utilization of personnel and equipment"; (3) manage "the support/operation section of the department"; and (4) "be able to supervise and manage firefighters and plan for technical improvements of Fire Department programs."[23] As explained in its Motion in Part VI(A)(3)(i), and in this Reply in Part V, CNS could not reasonably accommodate Drerup to perform these activities, which would necessarily require her presence in the Fire Department. Thus, because CNS had legitimate, nondiscriminatory reasons not to promote Drerup to the Assistant Fire Chief position, her age, gender, and disability discrimination and retaliation claims related to that event should be dismissed with prejudice.

2. *CNS required Drerup to continue performing her own job duties after November 2017 based on mission needs.*

CNS provides two legitimate, non-discriminatory reasons to justify its decision not to switch Drerup's duties with Fire Captain Josh Brown's duties following his promotion to the Fire Captain position in November 2017: (1) Drerup failed to provide a transition plan requested by Daniel Gleaves,[24] and (2) Chief Brock wanted Drerup to keep performing the document management duties she had been performing because she was the sole subject-matter expert in that area. [25] For her claim to survive, Drerup must show that both of these reasons were false or that the decision for Drerup and Brown to each maintain their respective duties was based at least in part on discriminatory reasons. *Spencer v. Fei, Inc*., 725 F. App'x 263, 267 (5th Cir. 2018). Drerup attempts to raise fact issues as to the transition plan but neglects any effort to establish that Chief Brock's desire to keep her in a role where she possessed unique expertise was pretextual. As

---

[23] Mot. Ex. 2-A, DRERUP 00004, Appx. 040.
[24] Mot. Ex. 7, Gleaves Dep. 41:6-24, Appx. 147; 45:10-15, Appx. 149.
[25] *Id*. at 46:13-18, Appx. 150; Mot. Ex. 14, Brock Dep. 141:7-142:8, Appx. 281-282.

Drerup failed to carry her burden to show pretext as to at least one of CNS's proffered legitimate, nondiscriminatory reasons, summary judgment as to Drerup's gender, age, and disability discrimination and retaliation claims related to Drerup's desire to trade duties with Fire Captain Brown should be dismissed with prejudice. [26]

   3.  *The day-shift Battalion Chief position was reclassified as a Fire Captain position.*

Drerup attributes to Chief Brock a claim that he decided to downgrade the day-shift Battalion Chief position previously held by Morgan for budgetary reasons. Resp. 44. But Chief Brock never testified as such. Instead, he testified that the position was reclassified after it was determined CNS had no need for a Battalion Chief on day shift.[27] Drerup argues that "CNS knew that if they posted and filled Morgan's position, they would be unable to justify the decision to not promote Drerup, who was already doing much of the work associated with the position and had been working closely with Morgan." Resp. 44. But there is simply no evidence in the record to support that argument, and Drerup cites none in her brief.

Moreover, Drerup argues that because Donovan Morgan was permitted to maintain his Battalion Chief rank while working on day shift, CNS should have been required to backfill his position with another individual of the Battalion Chief rank. But this decision was made by a different company—not CNS—because that company did not want to demote Morgan and thus is not probative.[28] Drerup also points to two documents which appear to analyze whether certain positions can be eliminated, arguing that these documents establish CNS's reclassification of the

---

[26] Drerup also makes a passing reference to Metal Trades Council Vice President Brent Matlock, arguing it was discriminatory for CNS to allow him to fulfill the MTC Vice President duties and also retain his pension from the Fire Department, whereas Drerup—had she elected to work in a different department at Pantex—would have lost her pension. Resp. 27. This argument lacks merit. Matlock has remained a member of the Fire Department while he is fulfilling a temporary assignment with the MTC. Resp. App'x, Brock Dep. 124:20-125:8. Matlock and Drerup are not similarly situated, thus, this is not evidence of discrimination.

[27] Mot. Ex. 4, CNS's Interrogatory Resp. 5, Appx. 076-077.

[28] Mot. Ex. 14, Brock Dep. 65:11-66:2, 17-20, Appx. 267-268.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 8**

position is pretext. Resp. Br. 44 (citing Resp. App'x, App 638, 651). However, CNS did not eliminate Morgan's position when he retired; it was reclassified so that another individual of the Fire Captain rank would replace him. Nothing in the record suggests that the duties Morgan was performing could have only been performed by someone of the Battalion Chief rank. As a result, Drerup's age, gender, and disability-based discrimination and retaliation claims related to CNS's reclassification of the day-shift Battalion Chief position should be dismissed.[29] *Harper v. Fort Bend Indep. Sch. Dist.*, No. H-16-1678, 2017 U.S. Dist. LEXIS 70396, at *25 (S.D. Tex. May 9, 2017) (stating a reorganization is routinely held to be a nondiscriminatory reason for an employment decision).

4. *Drerup did not experience an adverse employment action when she did not take the annual Combat Challenge in 2015, 2016, or 2017.*

Drerup contends for the first time in her Response that CNS failed to reasonably accommodate her to allow her to take the Combat Challenge in 2015, 2016, or 2017. First, Drerup failed to timely exhaust any claim related to the Combat Challenge. Even assuming Drerup filed her first charge with the EEOC on May 16, 2017, she did not assert any claim related to the Combat Challenge in the intake questionnaire, barring her ability to assert them now. *See Garcia*, No. 2:18-CV-95-Z-BR, 2020 U.S. Dist. LEXIS 129629, at *8-9; *Champlin v. Manpower Inc.*, No. 4:16-CV-02987, 2018 U.S. Dist. LEXIS 13450, at *8 (S.D. Tex. Jan. 24, 2018). Moreover, events occurring in 2015 are time barred.

However, even if these were timely asserted claims, CNS's policy generally requires that a firefighter lose his or her Responder status and pay if the firefighter fails to take the Combat

---

[29] Drerup also states that Assistant Fire Chief Bill Ho-Gland "told Drerup she was already doing Morgan's job and she would get his position when he retired …." Resp. 14. In reality, Ho-Gland testified he wanted Drerup "to be prepared to get that job, my job and other management jobs in the department." Resp. App'x, Ho-Gland Dep. 30:14-21, App 121.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 9**

Challenge. Drerup never lost her Responder pay during the three-year period she did not take the Combat Challenge, and as a result, she did not experience an adverse employment action.[30] That CNS was unclear how to accommodate Drerup's medical restrictions requiring she have a clean, mold-free environment sufficient to allow her to safely take the Combat Challenge until it received further guidance from the medical department in 2018 is not evidence of discrimination.[31] Thus, to the extent that Drerup seeks to recover on a disability discrimination claim for her failure to take the Combat Challenge over a three-year period, that claim should be dismissed.

Ultimately, each of Drerup's failure to promote claims fail as they are each missing evidence of necessary elements. In the below chart, each "x" represents a fatal flaw in each of Drerup's asserted "failure to promote" claims.[32]

---

[30] Mot. Ex. 7, Gleaves Dep. 112:22-113:2, Appx. 163-164; 118:2-4, Appx. 165.

[31] Resp. App'x, Brock Dep. 36:4-18, App 201 (Q. And is it your testimony that there wasn't any conversations with medical in 2015, '16, and '17 that if the tower was washed out well that Ms. Drerup could go ahead and do the Combat Challenge? A. We had conversations about how we could accommodate that, but the physicians at the time maintained the opinion that they did not want her going to the tower with her restrictions. Q. And who were you talking with over in medical to obtain that information? A. It would have been the lead physician at the time. His name escapes me at the moment. Q. Would it have been Dr. Koos? A. No. That was the later physician that agreed that if it's washed out well that that could happen.").

[32] In this table, information in the far-left column represents the positions to which Drerup claims she should have been promoted. The "Promotion?" column refers to whether the position Drerup challenges would have amounted to a promotion from her Fire Captain position. The "Applied?," "Qualified?," "Rejected?," and "Employer Favorably Considered Similarly Qualified?" columns all represent the elements of a claim for failure to promote. *See Fortenberry*, 75 F. App'x at 927. The "No LNR?" column refers to whether Drerup established that CNS's legitimate, non-discriminatory reasons offered by CNS were false or that the reasons were based at least in part on Drerup's protected characteristics. *Spencer*, 725 F. App'x at 267. The "Exhaust Administrative Remedies?" column refers to whether Drerup exhausted her administrative remedies. Finally, the "Decision-maker accused of discrimination" column refers to whether Drerup even asserts that the decision-maker responsible for the relevant employment decision discriminated against her.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 10**

| | Promotion? | Applied? | Qualified? | Rejected? | Employer Favorably Considered Similarly Qualified? | No LNR? | Exhaust Administrative Remedies? | Decision-maker accused of discrimination? |
|---|---|---|---|---|---|---|---|---|
| **Assistant Fire Chief** | | | X | | X | X | | X |
| **Day Battalion Chief** | | X | X | X | X | X | X | |
| **Shift Battalion Chief** | | X | X | X | X | X | X | X |
| **Compliance Captain** | X | X | | X | | X | | |

### III.   Drerup offers speculative lay witness testimony insufficient to establish pretext.

*1.   Drerup's suggestion that other employees "felt" Drerup was treated in a discriminatory manner rests on unverifiable speculation.*

Drerup contends that testimony from former Battalion Chief Donovan Morgan, Assistant Fire Chief Ho-Gland, and a non-Fire Department employee Beth McLaughlin suggest that Chief Brock's motivation in failing to promote Drerup to the Assistant Fire Chief and day-shift Battalion Chief positions was based on her gender. Resp. 15, 51. McLaughlin was a Publications Specialist, an administrative position outside the Pantex Fire Department.[33] By her own Declaration, all of her knowledge stems from Drerup's complaints to her about Chief Brock's alleged discriminatory treatment, rather than her own personal knowledge, and as such is not probative here. *Arora v. Starwood Hotels & Resorts Worldwide, Inc.*, 294 F. App'x 159, 161 (5th Cir. 2008) ("Unsubstantiated hearsay evidence that would not be admissible at trial does not suffice to raise a genuine issue of material fact."); *Tatum v. S. Co. Servs.*, 392 F. Supp. 3d 689, 696 (E.D. Tex. 2018) ("Conclusory allegations, speculation, and unsubstantiated assertions are inadequate to satisfy the nonmovant's burden."). Moreover, Donovan Morgan testified he did not know whether

---

[33] Resp. App'x, McLaughlin Decl. ¶ 3, App 910.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 11**

the decision to reclassify his position had anything to do with Drerup, but that he knew "it was just a position change that they were going to make."[34] And Morgan testified he "never witnessed" Chief Brock do anything that would suggest to Morgan that Chief Brock wanted to prevent Drerup from "advancing."[35] Finally, although Drerup argues that Ho-Gland testified "that sex discrimination was a factor in failing to promote Drerup," she points to no such testimony, and there is none in the record. Resp. 51-52. Thus, this testimony cannot generate a material issue of fact.

2. *Drerup's alleged evidence that Chief Brock treated other female employees in a discriminatory manner is based exclusively on inadmissible hearsay.*

Drerup contends that Chief Brock discriminated against Pantex Plant employees Melynie Greaser and Jessica Cavazos because of their gender, which she contends supports her assertion of pretext. Resp. 53. This argument is fatally defective. First, Drerup cites her own testimony and the testimony of a retired Pantex firefighter, rather than to any testimony from Greaser or Cavazos, in support of those claims. *See id.* This is inadmissible hearsay for which no exception exists and thus is not competent summary judgment evidence. *See Arora*, 294 F. App'x at 161; *Tatum*, 392 F. Supp. 3d at 696. Further, even if Drerup had offered competent summary judgment evidence of these allegations, neither Greaser nor Cavazos is "similarly situated" to Drerup as Greaser is an Emergency Services Dispatch Center Manager and Cavazos is a secretary within the Fire Department. Neither Greaser nor Cavazos is a fire officer or firefighter Responder. Thus, this is irrelevant evidence insufficient evidence to defeat summary judgment. *Jackson v. Katy Indep. Sch. Dist.*, 951 F. Supp. 1293, 1299 (S.D. Tex. 1996) ("Discriminatory intent may be proven (among

---

[34] Resp. App'x, Morgan Dep. 149:4-20, 150:17-23, App 868.
[35] *Id.* at 160:18-161:20, 162:11-20, App 869-870. Morgan's testimony that he lacked any real personal knowledge of Chief Brock's discriminatory treatment of Drerup was in response questions about his Declaration where he makes the same conclusory allegation. *Id.* Morgan Decl. ¶ 8, App 783.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 12**

other ways) by … a history of discrimination against others *similarly situated* ….") (emphasis added).

   3.   *Any alleged comments mentioning gender or age were stray remarks.*

   Drerup contends that further evidence of CNS's discriminatory intent based on her gender is that once, Chief Brock told her "just because you are a woman doesn't mean you get anything," and at another time "FD management" called Drerup the "document lady." Resp. 52. Even if true, these allegations do nothing to defeat summary judgment. Drerup fails to provide evidence regarding the specific timing of when Chief Brock made the comment she attributes to him, nor does she make any effort to identify specifically who within "FD management" called her the document lady. As a result, Drerup fails to establish that these comments (1) were made proximate in time to the alleged adverse employment actions, or (2) relate to any particular employment decision. *Krystek v. Univ. of S. Miss.*, 164 F.3d 251, 256 (5th Cir. 1999). Nor does Drerup establish that the "document lady" conduct was made by an individual with authority over any employment decision that could me made related to her. *Id*.

   Drerup also contends that evidence of CNS's discriminatory intent based on her age includes that (1) Daniel Gleaves talked to her about when she intended to retire, and (2)  Fire Captain Brown told Drerup (a) he would only learn her duties so he could perform them when she retired and (b) he made comments that older people within the Fire Department should retire and the Fire Department should hire younger people. As discussed in Part VI(C)(3) of the Motion, Gleaves' alleged comment did not reference Drerup's age in a derogatory manner and was not made in the context of any alleged adverse employment decision. *Jackson v. Cal- W. Packaging Corp.*, 602 F.3d 374, 380 (5th Cir. 2010). As for any alleged comments of Fire Captain Brown, Drerup has offered no evidence that he has any authority over any employment decision related to

Drerup. *Id.* Thus, none of the foregoing comments can establish pretext related to Drerup's gender or age-based discrimination claims.

## IV.   Although Drerup made a number of complaints to the Employee Concerns Department, she never experienced an adverse employment action as a result of those complaints.

Though it is certainly true that Drerup made a staggering number of complaints—including complaints about her direct supervisor, his supervisor, and his supervisor—there were never any adverse employment consequences. Merely complaining does not give rise to retaliation claims. As addressed in Part VI(D) of its Motion and here in Parts I and II, Drerup did not experience a legally cognizable adverse employment action when: (1) she was not promoted to Assistant Fire Chief; (2) CNS did not distribute all of Morgan's duties to her between 2016 and 2018; (3) CNS reclassified Morgan's Battalion Chief position; (4) CNS did not transition her duties to Brown and Brown's duties to her; and (5) CNS assigned Brown HSO, SSESC Team, and Chaplain duties. As a result, she cannot establish a prima facie case of retaliation and those claims should be dismissed. *Garcia v. City of Amarillo*, No. 2:18-CV-95-Z-BR, 2020 U.S. Dist. LEXIS 129629, at *16-17 (N.D. Tex. July 22, 2020); *McMichael v. Transocean Offshore Deepwater Drilling, Inc.*, 934 F.3d 447, 456 (5th Cir. 2019); *Washington v. Veneman*, 109 F. App'x 685, 687 (5th Cir. 2004). Further, Drerup provided no evidence of a causal connection between a complaint and any employment action.

## V.   Summary judgment is proper as to Drerup's Americans with Disabilities Act ("ADA") claims.

### 1.   *Drerup does not have a qualifying disability.*

In her Response, Drerup does an about-face from her claimed disabilities of "mold sensitivity" and "migraines" in her Second Amended Complaint, and instead claims her disability is "chronic allergic rhinitis." Resp. 33, n.22; *see also* 2nd Am. Compl. ¶ 35. This amounts to a new theory of liability Drerup waived by failing to allege it in her Second Amended Complaint. *Green*

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 14**

*v. JP Morgan Chase Bank, N.A.*, 562 F. App'x 238, 240 (5th Cir. 2014) ("A claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court.").[36]

Even were the Court to consider this new claim, a review of the medical records she cites in support of such "diagnosis," reveals that Drerup's actual diagnosis is "allergic rhinitis," also known as seasonal allergies or hay fever.[37] Drerup argues that her symptoms from allergic rhinitis included "coughing, headache, nasal congestion, purulent sputum, eye infections, chest pain, thickening of her mucous membranes, and burning and hoarseness in her throat." Resp. 34. She uses these symptoms to argue that she "had difficulty breathing and was unable to breathe." *Id*. But none of her medical records suggest she could not breathe.[38] Rather, Drerup never claimed any difficulty breathing and, many times, specifically denied any difficulty breathing.[39] Thus, Drerup's allergic reactions to respiratory irritants do not rise to the level of a disability under the ADA as she has not established that they substantially limited a major life function.[40] *Milton v. Tex. Dep't of Criminal Justice*, No. H-10-303, 2011 U.S. Dist. LEXIS 145907, at *3 (S.D. Tex. Dec. 17, 2011) ("Brief coughing and shortness of breath caused by common odors do not rise to

---

[36] To the extent the Court construes Drerup's Response as a motion to amend, such an amendment is not warranted here as there is no evidence that Drerup could not have asserted this claim at the time she filed her Second Amended Complaint. *See Villarreal v. Ocwen Loan Servicing, LLC*, No. 2:18-CV-10-AM/CW, 2019 U.S. Dist. LEXIS 177635, at *10 (W.D. Tex. Sep. 25, 2019). Indeed, Drerup's own disability should have been known to her at the time she originally filed her Complaint.
[37] *See generally* Resp. App'x, App 834-857; *see also* MedlinePlus, Allergic Rhinitis, https://medlineplus.gov/ency/article/000813.htm.
[38] Resp. App'x, App 834-857.
[39] *Id*. at App 846, 855-57 (noting no dyspnea).
[40] Drerup cites *Burnley v. City of San Antonio*, No. SA-02-CA-0489 NN, 2004 U.S. Dist. LEXIS 421 (W.D. Tex. Jan. 6, 2004), arguing that "chronic rhinitis [is] an ailment of the respiratory system that necessarily affected breathing…" Resp. 34. However, the *Burnley* court did not, as a matter of law, state that any individual experiencing chronic rhinitis experiences difficulty breathing. Rather, the court cited evidence adduced through deposition testimony, which indicated that the plaintiff "may have sustained permanent damage to her lung functioning and capacity" as a result of her condition. *Id*. at *17-18. By contrast here, Drerup has offered no similar evidence. Drerup also argues that *O'Reilly v. Gov't of the Virgin Islands*, No. 11-0081, 2015 U.S. Dist. LEXIS 84407, at *16-17 (D.V.I. June 30, 2015) and *Homeyer v. Stanley Tulchin Associates, Inc.*, 91 F.3d 959, 960 (7th Cir. 1996) support her arguments. However, neither case applies as in resolving motions on the pleadings, the court in each case merely accepted as true the plaintiffs' allegations.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 15**

the level of impairment required to qualify as disabled under the Americans with Disabilities Act. Disabilities include uncontrolled epilepsy, cerebral palsy, and muscular dystrophy — not occasional or persistent allergic or asthmatic reactions.").

2. *There is no reasonable accommodation CNS could provide Drerup that would not cause CNS undue hardship to allow Drerup to act as a Responder.*

Drerup further contends that she could have been reasonably accommodated sufficient to allow her to work as a Responder if (1) she were provided a workspace in a building close to the Fire Department or one of either (a) a vehicle to drive separately to an emergency, or (b) the opportunity to be picked up by other members of the Fire Department responding to an emergency; and (2) she was permitted to perform incident command duties with the Battalion Chiefs in an area away from fire scene known as the "cold zone." Resp. 37-38. But Chief Brock testified that he tried to offer Drerup the opportunity to work from buildings closer to the Fire Department, but she declined to work in those buildings because she believed they were "too dirty."[41] Nor did CNS have any vehicles in its limited fleet to assign to Drerup to use to respond to emergencies from a location other than the Fire Department.[42] Related to her request to perform incident command duties, Chief Brock testified (1) it would be "very difficult" to permit Drerup to respond in an incident command position while also maintaining compliance with her restrictions requiring a mold and dust free environment[43]; (2) Drerup did not have the requisite qualifications to work on an incident command team[44]; (3) CNS did not have the space to allow Drerup to work in the incident command room[45]; (4) even if Drerup could respond to an emergency scene,  she could not work as an incident commander because that individual had to be in place when the first crews

---

[41] Resp. App'x, Brock Dep. 39:18-40:9, App 202.
[42] *Id.* at 39:6-17, App 202.
[43] *Id.* at Brock Dep. 40:21-41:2, App 202.
[44] *Id.* at Brock Dep. 42:14-43:14, App 202.
[45] *Id.* at Brock Dep. 41:12-42:17, App 202-203.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 16**

arrive, and her location in an area away from the rest of the fire crew would have delayed her response.[46]

Drerup's suggestion that firefighters often respond from locations outside the Fire Department—therefore creating the false impression that it is feasible for CNS to allow her to respond from a location separate from the other firefighters—misconstrues the evidence. Resp. 37. Chief Brock's testimony suggests he was concerned with Drerup responding separately from her crew in a different vehicle (rather than simply responding with her crew on one single vehicle from a location away from the Fire Department), which would necessarily cause varying and delayed response times.[47] Similarly, that Captain Allen Hale officed in Building 12-39 across the backyard from the Fire Department[48] does not support Drerup's argument that CNS could accommodate her request to respond from other locations as Chief Brock testified he offered Drerup the opportunity to work in that building, but she refused.[49] Nor is her suggestion that two other officers were housed at Amarillo College while maintaining Responder status probative. Chief Brock testified that, had they ever been needed for an escalating scene, they would have been called in, but neither firefighter ever responded to a scene while stationed at that outside location.[50] Moreover, related

---

[46] *Id.* at Brock Dep. 43:16-44:6, App 203. Drerup's argument appears to ignore the realities of the importance of time in a firefighter's response to an emergency scene. Every second counts, which is why NFPA Regulation 1710-9 §4.1.2.1(5), by which CNS is bound, requires that CNS has "480 seconds or less travel time for the deployment of an initial full alarm assignment at a fire suppression incident," with the first-due engine company responding in less than 240 seconds 90% of the time and the second-due engine company responding in 360 seconds 90% of the time. *Id.* §§ 4.1.2.1(3)-(4). Moreover, the NFPA contemplates that "companies"—i.e., a group of firefighters assigned to a single vehicle—must meet these response times. *Id.* § 3.3.15. With these types of requirements, the Fire Department cannot afford to first drive to another building to pick Drerup up on their way to an emergency scene.

[47] Resp. App'x, Brock Dep. 47:2-7, 48:4-15, App 204; 160:14-161:7, App 231 ("Q: … [I]s there a distinction between the duties that Mr. Knapp and Mr. Hill were performing and the duties that a typical shift officer stationed at the fire station would be performing? A. Yes. Those duties are significantly different. Q. And in what instances would Mr. Knapp and Mr. Hill whenever they were assigned out at Amarillo College have performed responder functions? A. If we had a major incident where we were doing a recall of all of our personnel, then they would have been brought back in as responders. Q. Okay. So are you saying then that on your run-of-the-mill, so to speak, call they wouldn't be responding to everything; is that right? A. That's correct.").

[48] Resp. App'x, Hale Dep. 163:6-17, App 31; 226:11-20, App 046.

[49] Resp. App'x, Brock Dep. 40:1-5, App 202.

[50] *Id.* at 62:5-9, App 208.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 17**

to her claim that she could have acted as a Responder because an SCBA mask would reduce her exposure to respiratory irritants, Chief Brock testified that the SCBA provides only a limited supply of air and that Drerup would necessarily have to remove her mask in order to change out air supply bottles, which would expose her to the irritants in the environment.[51]

Ultimately, to accommodate Drerup in the manner she requested to permit her to perform Responder duties, CNS would have endured a significant hardship as it would have had to materially restructure her position and duties along with the duties of other firefighters, which could also compromise firefighter safety and effectiveness.[52] Drerup tries to distinguish Fifth Circuit case law set forth in *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999), by arguing that the facts are "far afield" of those here because the plaintiff sought to have a new job category created for him due to the unavailability of vacant positions for which he was qualified post back injury. Resp. 39. But this is exactly what Drerup requests. She wants CNS to permit her to respond from a remote location outside of the Fire Department in an incident command role as a Battalion Chief—a role that does not currently exist. Thus, Drerup's failure to accommodate claim related to Responder duties fails and should be dismissed with prejudice.

Finally, Drerup suggests without support that CNS failed to accommodate her sufficient to allow her to apply for a 24-hour Battalion Chief position. Resp. 42. This argument ignores clear Fifth Circuit law requiring that, to establish a prima facie case for discrimination based on a failure to promote, a plaintiff must show "she applied for and was qualified for a job for which the employer was seeking applicants." *Fortenberry*, 75 F. App'x at 927. Thus, Drerup's claim for

---

[51] Mot. Ex. 14, Brock Dep. 50:19-52:2, Appx. 258-260.
[52] *Id.* at 39:6-9, 12-17, Appx. 249; 40:21-23, 25, Appx. 250; 41:1-2, Appx. 251; 43:11-14, 16-25, Appx. 252; 44:1-6, Appx. 253; 45:19-47:7, Appx. 254-256; 50:19-51:23, Appx. 258-259; 51:3-52:2, 8-11, Appx. 259-260; 56:18-57:18, Appx. 264-265; 71:25-74:6, Appx. 271-274; 142:9-19, Appx. 282; 158:24-160:13, Appx. 287-289; 162:1-19, Appx. 291; 163:2-7, Appx. 292; Mot. Ex. 10, McLaurin Dep. 168:4-169:2, Appx. 223-224; Mot. Ex. 7, Gleaves Dep. 58:21-59:7, Appx. 157-158.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 18**

failure to accommodate arising out of this 24-hour Battalion Chief position should be dismissed with prejudice.

## VI.   Summary judgment is proper as to certain of Drerup's claims because she failed to timely exhaust her administrative remedies.

Drerup contends that, because the Equal Employment Opportunity Commission received her Intake Questionnaire on May 16, 2017, she timely exhausted all claims. Resp. 64. Assuming May 16, 2017 is the earliest date Drerup filed her Charge, the 300-day lookback period extends only to July 20, 2016. *Id.* With respect to any claim related to the 2015 MTC strike, such is time barred for Drerup's failure to administratively exhaust the claim and any claim arising from that event should be dismissed. *See Garcia*, No. 2:18-CV-95-Z-BR, 2020 U.S. Dist. LEXIS 129629, at *8-9; *Champlin*, No. 4:16-CV-02987, 2018 U.S. Dist. LEXIS 13450, at *8.

Neither did Drerup timely exhaust her claims related to the failure to promote her to either the day or shift Battalion Chief positions. On her Intake Questionnaire, Drerup complained only of sex discrimination involving one incident in March 2017 when a male firefighter was inadvertently allowed to respond to an emergency fire and receive overtime pay, but Drerup was not. Her later claims that she should have been promoted to either the shift or day Battalion Chief positions do not relate back to those assertions as they gave rise to new legal theories. *See Manning v. Chevron Chem. Co.*, 332 F.3d 874, 878-79 (5th Cir. 2013). Drerup contends she provided the EEOC investigator with copies of complaints she had previously filed with the Pantex Employee Concerns Department. However, she offers no evidence of which complaints she sent the EEOC or even that the forms were sent, outside her own self-serving declaration that she sent the investigator "internal Employee Concerns forms that I filed alleging discrimination and harassment, which provided very specific details about the discrimination and harassment,

including Chief Brock downgrading Battalion Chief Morgan's position…."[53] But this kind of testimony, without more, cannot generate a material issue of fact. Thus, Drerup's discrimination claims related to the day-shift Battalion Chief should be dismissed with prejudice.

**VII.**    **Claims asserted under the Lilly Ledbetter Fair Pay Act fail as a matter of law.**

Drerup contends that CNS did not directly address her claim under the Lilly Ledbetter Fair Pay Act ("LLFPA") in its Motion, and instead indicated that "the only distinction under this Act is that the statute of limitations differs than under Title VII and the TCHA." First, to the extent that Drerup intends to assert a standalone claim under the LLFPA, such claim must be dismissed as the Act does not create a separate cause of action. *Belmonte v. City of Dall.*, No. 3:19-CV-2656-G-BK, 2020 U.S. Dist. LEXIS 119818, at *9 (N.D. Tex. June 3, 2020). To the extent that Drerup seeks to use the LLFPA to extend any time barred claims, the Act cannot do so for any of Drerup's claims based in discrimination or retaliation.[54] *See Green v. Hosp. Serv. Dist.*, No. 16-223-SDD-EWD, 2017 U.S. Dist. LEXIS 41241, at *16 (M.D. La. Mar. 22, 2017) ("[T]he Lilly Ledbetter Act applies to discrimination in compensation - not discrimination regarding failure to promote."); *Blasingame v. Eli Lilly & Co*., No. H-11-4522, 2013 U.S. Dist. LEXIS 150461, at *14 (S.D. Tex. Oct. 18, 2013) (same).

<b>CONCLUSION</b>

For the reasons stated in its Motion for Summary Judgment and Brief in Support, coupled with the reasons set forth above, CNS requests that the Court grant its Motion and dismiss all claims asserted by Drerup with prejudice.

---

[53] Resp. App'x, Drerup Decl. ¶ 26, App 907.
[54] Br. Supp. Mot. 52 n.165.

**Defendant Consolidated Nuclear Security, LLC's Reply in Support of Motion for Summary Judgment – Page 20**

Dated: March 22, 2021                    Respectfully Submitted,


                                         */s/ Robert C. Vartabedian*
                                         Robert C. Vartabedian
                                         Texas Bar No. 24053534
                                         Robert.Vartabedian@alston.com
                                         Alix D. Allison
                                         Texas Bar No. 24086261
                                         Alix.Allison@alston.com

                                         Alston & Bird LLP
                                         3700 Hulen Street, Suite 150
                                         Fort Worth, Texas 76107
                                         214-922-3570

                                         Attorneys for Defendant
                                         Consolidated Nuclear Security, LLC


## CERTIFICATE OF SERVICE

        The undersigned hereby certifies that a true and correct copy of the foregoing document has been served upon all counsel of record via the Court's electronic service system on this 22nd day of March, 2021.

                                         */s/ Robert C. Vartabedian*
                                         Robert C. Vartabedian