IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
AMARILLO DIVISION

| | | |
|---|---|---|
| BRENDA DRERUP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 2:19-CV-106-BR |
| | § | |
| CONSOLIDATED NUCLEAR | § | |
| SECURITY, LLC, | § | |
| | § | |
| Defendant. | § | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Before the Court is Defendant Consolidated Nuclear Security, LLC's ("CNS") Motion for Summary Judgment (ECF 63–65), Plaintiff Brenda Drerup's ("Drerup") response (ECF 71, 74–80, 83), and CNS' reply (ECF 87). For the reasons stated below, CNS' Motion for Summary Judgment is GRANTED.

## I.   FACTUAL BACKGROUND

Drerup is a 56-year-old female. (ECF 80-1 at 1). In 2006, she was diagnosed with allergic rhinitis. (ECF 79-2 at 17). She has experienced upper respiratory symptoms, such as coughing, headache, nasal congestion, sinus pain, sore throat, chills, nasal stuffiness, hoarseness, chest pain, itchy eyes, and sneezing. (ECF 79-3 at 7, 9; 79-4 at 10).

Drerup is a member of the Pantex Fire Department, CNS' internal fire department. (ECF 65-1 at 12, 14). She became a Fire Captain in 2008. (*Id*. at 12). In 2014, mold was found in Drerup's office in the fire station. (ECF 75-1 at 12–13; 75-2 at 168; 76-2 at 5). Drerup experienced headaches at the time mold was found in her office. (ECF 75-1 at 12–15). Due to her headaches, there were a "couple of times" Drerup could not concentrate on her work, and other times when she did not feel "100 percent" with respect to driving a fire truck to an emergency incident. (ECF 65-1 at 111–13). Drerup requested to be moved out of the fire station due to her concerns regarding the mold, and CNS

granted her request. (*Id*. at 86; 75-1 at 15; 76-2 at 5). Drerup continues to work outside the fire station, as she is unable to enter the fire station due to the mold. (ECF 65-1 at 298; 75-1 at 110; 75-2 at 74–75; 80-1 at 5).

Fire Department employees can qualify to act as a responder in emergency situations by meeting certain requirements, including passing the Combat Challenge ("CC"), a physical agility test. (ECF 65-1 at 245). Responders must be able to address an emergency in an environment where respiratory irritants may exist. (*Id*. at 301). The CC must be taken yearly to maintain responder status. (ECF 75-1 at 16). It is undisputed that Fire Department employees who obtain responder status are eligible to earn additional compensation. (*See* ECF 64 at 13; 83 at 17). It is further undisputed Drerup did not fulfill the CC requirement from 2015–2018. (*See* ECF 64 at 13; 83 at 50–51). In 2015, Fire Department employees with responder status filled in for striking employees and earned overtime. (ECF 75-1 at 27; 80-1 at 5). During the strike, Drerup did not act as a responder or assist in filling for the striking employees. (ECF 75-1 at 26–27; 80-1 at 5).

On May 16, 2016, in anticipation of Battalion Chief Donavon Morgan's ("Morgan") medical leave starting May 18, 2016, Assistant Fire Chief William Ho-Gland ("Ho-Gland") issued a memo temporarily distributing Morgan's duties between four employees, including Drerup. (ECF 65-1 at 44). Shortly before Morgan's November 15, 2016 retirement, Fire Chief Michael Brock ("Chief Brock") and Ho-Gland decided to eliminate the Battalion Chief position. (*Id*. at 76–77). The Battalion Chief position Morgan held was replaced with a Fire Captain position (the "reclassified position"). (*Id*.). Drerup filed an intake questionnaire with the Equal Employment Opportunity Commission ("EEOC") on May 4, 2017 alleging sex discrimination. (ECF 79-1 at 2–5). The EEOC acknowledged Drerup's May 4, 2017 intake questionnaire in a May 16, 2017 letter. (ECF 78-3 at 5).

On February 12, 2018, Joshua Brown ("Brown") was hired to the reclassified position. (ECF 80-1 at 7). Drerup inquired about the possibility of Brown taking over some of her job duties so she

could "move forward within [her] career ladder." (ECF 75-2 at 94–95; 77-3 at 41). Ultimately, none of Drerup's job duties were reassigned to Brown. (ECF 65-1 at 146–48; 74-3 at 30). Drerup applied for the Assistant Fire Chief ("AFC") position in January 2019. (ECF 77-2 at 7). An individual qualified for the AFC position must have the ability to be physically present at the fire station. (ECF 65-1 at 39–41, 195). Drerup was not hired to the AFC position. (*Id*. at 79). Drerup completed and signed an EEOC charge on March 8, 2019. (ECF 79-2 at 9–13). That charge, which the EEOC received March 11, 2019, alleges discrimination based on sex, age, and disability, as well as retaliation. (*Id*. at 9).

Drerup filed this suit on May 14, 2019. (ECF 1). Her Second Amended Complaint alleges claims under the Americans with Disabilities Act ("ADA"), Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act of 1967 ("ADEA"), and the Texas Commission on Human Rights Act ("TCHRA"). (*See* ECF 32). CNS' motion for summary judgment seeks dismissal of all Drerup's claims.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when the pleadings, affidavits, and other summary judgment evidence show that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the lawsuit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. at 248. To determine whether there are any genuine issues of material fact, the Court must first ascertain the factual issues that are material under the applicable substantive law. *See id*.; *Lavespere v. Niagra Mach. & Tool Works*, 910 F.2d 167, 178 (5th Cir. 1990), *abrogated on other grounds by Little v. Liquid Air Corp.*, 37 F.3d 1069, 1076, n.14 (5th Cir. 1994). Next, the Court must review the evidence on

those issues, viewing the facts in the light most favorable to the nonmoving party. *Lavespere*, 910 F.2d at 178; *Newell v. Oxford Mgmt. Inc.*, 912 F.2d 793, 795 (5th Cir. 1990) (citing *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir. 1986)); *Medlin v. Palmer*, 874 F.2d 1085, 1089 (5th Cir. 1989). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3). However, Rule 56 "does not impose on the district court a duty to sift through the record in search of evidence to support" a party's motion for, or opposition to, summary judgment. *Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915–16, n.7 (5th Cir. 1992). The Court should not weigh the evidence and determine the truth of the matter in determining whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249.

If the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, no genuine dispute for trial exists. *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). Conclusory allegations, unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence and are insufficient to defeat a motion for summary judgment. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996); *Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir. 1994).

If "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure all of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot*, 780 F.2d 1194. The "beyond peradventure" standard imposes a "heavy" burden. *Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). If "the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by showing—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Duffie v. United States*, 600 F.3d 362, 371 (5th

Cir. 2010) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986) (internal quotation omitted)). The movant then "must demonstrate the absence of a genuine issue of material fact," but does not have "to negate the elements of the nonmovant's case." *Id*. (citing *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

"If the moving party fails to meet its initial burden, the motion for summary judgment must be denied, regardless of the nonmovant's response." *Quorum Health Res., L.L.C. v. Maverick Cty. Hosp. Dist.*, 308 F.3d 451, 471 (5th Cir. 2002) (citing *Little*, 37 F.3d at 1075). On the other hand, if the movant meets its burden to show an absence of evidence supporting the nonmovant's case, then the nonmovant must go beyond his pleadings and designate specific facts showing there is a genuine issue for trial. *Little*, 37 F.3d at 1075 (citing *Celotex*, 477 U.S. at 324). If the nonmovant cannot provide some evidence to support its claim, summary judgment is appropriate. Fed. R. Civ. P. 56(e); *Stahl v. Novartis Pharms. Corp.*, 283 F.3d 254, 263 (5th Cir. 2002).

### III.   ANALYSIS

#### A. Exhaustion of administrative remedies

CNS' motion seeks dismissal of some of Drerup's claims based on the affirmative defense of failure to exhaust administrative remedies and argues Drerup did not file a timely charge with respect to the challenged claims. Specifically, CNS argues Drerup has not exhausted her administrative remedies with respect to her "claims about temporary reassignment of [Morgan's] duties and the reclassification of the Battalion Chief work." (ECF 64 at 52). CNS further argues Drerup has not exhausted her administrative remedies with respect to "any claim related to the 2015 strike." (*Id.*).

In response, Drerup argues her intake questionnaire constitutes a timely charge and encompasses her sex discrimination claim regarding CNS' failure to promote her to the Battalion

Chief position. (ECF 83 at 76). Drerup further argues she has exhausted her administrative remedies with respect to her discrimination claims regarding the 2015 strike because the Lilly Ledbetter Fair Pay Act of 2009 (the "Fair Pay Act") extends the statute of limitations. (*Id*. at 77).

Failure to exhaust is an affirmative defense. *Davis v. Fort Bend Cty.*, 893 F.3d 300, 307 (5th Cir. 2018). "Employment discrimination plaintiffs must exhaust administrative remedies before pursuing claims in federal court." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378–79 (5th Cir. 2002). "Exhaustion occurs when the plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Id*. at 379. "[A] plaintiff filing a complaint regarding an employment practice occurring in Texas has 300 days to file a charge with the EEOC under Title VII and the ADA." *Garcia v. City of Amarillo*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *3 (N.D. Tex. July 22, 2020); *see Tyler v. Union Oil Co. of Cal.*, 304 F.3d 379, 384 (5th Cir. 2002) (applying rule to ADEA claims); *see Collier v. Dall. Cty. Hosp. Dist.*, No. 3:17-CV-3362-D, 2019 WL 2394225, at *5 (N.D. Tex. June 6, 2019). A complaint under the TCHRA "must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred." Tex. Lab. Code § 21.202(a).

A "plaintiff must file a charge of discrimination with the EEOC within 300 days after learning of the conduct alleged." *Collier*, No. 3:17-CV-3362-D, 2019 WL 2394225, at *5. A discrimination charge is filed on the date the EEOC receives the charge, not on the date the charge is mailed. *Deleon v. Gen. Insulation, Inc.*, 575 F. App'x 292, 293 (5th Cir. 2014); *Taylor v. Gen. Tel. Co. of Sw.*, 759 F.2d 437, 440 (5th Cir. 1985) (applying rule to ADEA claims); *Owens v. Dall. Cty. Cmty. Coll. Dist.*, No. 3:16-CV-3162-L, 2017 WL 3190727, at *3 (N.D. Tex. May 16, 2017), *adopted by* 2017 WL 3172748 (N.D. Tex. July 26, 2017) (applying rule to ADA claims).

Courts interpret the scope of a charge broadly, looking at the "administrative EEOC investigation that 'can reasonably be expected to grow out of the charge of discrimination.'" *McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (quoting *Sanchez v. Standard Brands*, *Inc.*, 431 F.2d 455, 466 (5th Cir. 1970)). Courts use a fact-intensive analysis that looks "beyond the four corners of the document to its substance" when determining whether a claim was within a charge's scope. *Id*.; *see Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006). "[A]n intake questionnaire that informs the EEOC of the identity of the parties and describes the alleged discriminatory conduct in enough detail to enable the EEOC to issue an official notice of charge to the respondent" is sufficient to constitute a charge. *Conner v. La. Dep't of Health & Hosps.*, 247 F. App'x 480, 481 (5th Cir. 2007).

Even assuming Drerup's intake questionnaire, which the EEOC acknowledged on May 16, 2017 (ECF 78-3 at 5), constitutes a charge, Drerup has failed to show specific evidence creating a genuine issue of material fact regarding whether she exhausted the claims CNS challenges: (1) her claims regarding temporary reassignment of Morgan's duties, (2) her claims regarding CNS' reclassification of the Battalion Chief position, and (3) her claims regarding the 2015 strike.

First, Drerup's claims under the ADA, Title VII, ADEA, and TCHRA based on CNS' May 16, 2016 temporary reassignment of Morgan's duties (*see* ECF 65-1 at 44) are barred because May 16, 2016 is more than 300 days before May 16, 2017, the date the EEOC acknowledged Drerup's intake questionnaire.

Second, even assuming, as Drerup argues, the reclassification of the Battalion Chief position did not occur until December 18, 2017 (*see* ECF 83 at 76), the Court finds Drerup's claims under the ADA, Title VII, ADEA, and TCHRA based on CNS' reclassification of the Battalion Chief position to a Fire Captain position are barred. Drerup did not assert discrimination based on CNS' reclassification of the Battalion Chief position to a Fire Captain position in a charge until she

completed and signed an EEOC charge on March 8, 2019, which the EEOC received on March 11, 2019. (ECF 79-2 at 9–13). March 11, 2019 is more than 300 days after December 18, 2017. Though Drerup argues her March 11, 2019 charge relates back to the filing of her intake questionnaire (*see* ECF 83 at 76–77), the Court cannot agree. The charge received March 11, 2019 asserts additional forms of discrimination and alleges new and independent facts, including those related to the reclassification of the Battalion Chief position. *See Hornsby v. Conoco, Inc.*, 777 F.2d 243, 247 (5th Cir. 1985) (finding amended EEOC complaint did not relate back to original EEOC complaint where plaintiff asserted an additional form of discrimination, alleged new and independent facts, and made amendments that "were far more substantive than merely cures to technical defects").

Finally, with respect to Drerup's discrimination claims arising out of the strike Drerup alleges occurred from August 29, 2015 to October 5, 2015, the Court notes the Fair Pay Act does not create a separate cause of action. *Belmonte v. City of Dallas*, No. 3:19-CV-2656-G-BK, 2020 WL 3859960, at *4 (N.D. Tex. June 3, 2020), *adopted by* 2020 WL 3844118 (N.D. Tex. July 7, 2020). Though Drerup argues she has asserted a claim under the Fair Pay Act arising out of the 2015 strike, the Fair Pay Act merely "provides that the statute of limitations on Title VII claims based on unequal compensation begins to run anew following each receipt of unequal pay." *Id*. (internal quotation and citations omitted); *see* Pub. L. No. 111-2 (Fair Pay Act applies to Title VII, the ADA, and other antidiscrimination statutes). The Court finds Drerup's claims under the ADA, Title VII, ADEA, and TCHRA based on the alleged August 29, 2015 to October 5, 2015 strike are barred because she has not shown her intake questionnaire received on May 16, 2017 was filed within 300 days of any receipt of unequal pay relating to the 2015 strike.

**B. ADA claims**

CNS argues Drerup's ADA claims fail because Drerup cannot establish a prima facie case of discrimination under the ADA. Specifically, CNS argues Drerup cannot show she has a

disability, was qualified to act as a responder, was qualified for the AFC position, or suffered an adverse employment action. (ECF 64 at 22–41).

Because Drerup relies on circumstantial evidence to support her ADA claim, it is properly analyzed under the *McDonnell Douglas*[1] burden shifting framework. *See Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999). To survive a summary judgment motion under this framework:

> The plaintiff must first demonstrate a prima facie case, and then the burden of production[2] shifts to the defendant to proffer a legitimate, non[-]discriminatory reason for its action. If it does that, the presumption of discrimination disappears. The plaintiff, who always has the ultimate burden, must then produce substantial evidence indicating that the proffered legitimate non[-] discriminatory reason is a pretext for discrimination.

*Vess v. MTD Consumer Grp., Inc.*, 755 F. App'x 404, 407 (5th Cir. 2019) (quoting *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 216 (5th Cir. 2016)).[3] Although intermediate evidentiary burdens shift back and forth under this framework, the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains with plaintiff at all times. *Carrizal*, No. 3:17-CV-2813-D, 2019 WL 1077350, at *4.

To establish a prima facie case of discrimination under the ADA, Drerup must show (1) she had a disability, (2) she was qualified for the job, and (3) there was a causal connection between an adverse employment action and her disability. *Id*. at *3; *EEOC v. LHC Grp., Inc.*, 773 F.3d 688, 697 (5th Cir. 2014).

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

[2] The defendant's "burden is one of production, not proof, and involves no credibility assessments." *Carrizal v. Quality Edge, Inc.*, No. 3:17-CV-2813-D, 2019 WL 1077350, at *4 (N.D. Tex. Mar. 7, 2019) (citing *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 385 (5th Cir. 2003)); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000).

[3] "[I]t is unclear whether the mixed-motive alternative to rebutting a defendant-employer's proffered legitimate reason is still viable in ADA discrimination cases...." *Dandridge v. Principal Mgmt. Grp. of N. Tex.*, No. 3:19-CV-2118-B, 2021 WL 1688438, at n.9 (N.D. Tex. Apr. 29, 2021) (internal quotation and citation omitted). The Court need not address this issue. As discussed below, Drerup failed to show specific evidence creating a genuine issue of material fact on whether her chronic allergic rhinitis constitutes a disability under the ADA.

The ADA defines "disability" as: "(A) a physical or mental impairment that substantially limits one or more major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(1). Major life activities include:

> (i) Caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, sitting, reaching, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, interacting with others, and working; and

> (ii) The operation of a major bodily function, including functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions. The operation of a major bodily function includes the operation of an individual organ within a body system.

29 C.F.R. § 1630.2(i)(1)(i)–(ii).

> (i) The term "substantially limits" shall be construed broadly in favor of expansive coverage, to the maximum extent permitted by the terms of the ADA. "Substantially limits" is not meant to be a demanding standard.

> (ii) An impairment is a disability within the meaning of this section if it substantially limits the ability of an individual to perform a major life activity as compared to most people in the general population. An impairment need not prevent, or significantly or severely restrict, the individual from performing a major life activity in order to be considered substantially limiting. Nonetheless, not every impairment will constitute a disability within the meaning of this section.

*Id*. § 1630.2(j)(1)(i)–(ii).

### i.   Prima facie case

CNS relies on the following evidence in support of its argument that Drerup's mold sensitivity and migraine headaches do not constitute disabilities under the ADA:

- Drerup's deposition testimony that she experienced eye infections, headaches, thickening of her mucous membranes, burning and hoarseness in her throat, nausea, and a feeling of tiredness when exposed to mold (ECF 65-1 at 109–10);

- Drerup's deposition testimony that she has experienced some shortness of breath when exposed to mold, but that she is unsure whether that was related to her mold sensitivity or anxiety and panic attacks (*id*. at 111); and

- Drerup's deposition testimony that due to her headaches there were a "couple of times" that she could not concentrate on her work, and other times when she did not feel "100 percent" with respect to driving a fire truck to an emergency incident (*id*. at 111–13).

(*See* ECF 64 at 23). Based on this evidence, CNS argues Drerup's alleged physical impairments of mold sensitivity and migraine headaches do not substantially limit one or more of her major life activities.

In response, Drerup claims her disability is chronic allergic rhinitis. (ECF 83 at 43). Drerup asserts she "has been diagnosed with allergic rhinitis on an almost ongoing, chronic basis since at least 2006." (*Id*. at 44) (citing ECF 79-2 at 17–18; 79-3; 79-4 at 1–10). Drerup further asserts her symptoms include "coughing, headache, nasal congestion, purulent sputum, eye infections, chest pain, thickening of her mucous membranes, and burning and hoarseness in her throat." (*Id*.) (citing ECF 75-1 at 12–15; 75-2 at 168; 76-2 at 5; 78-2 at 36; 79-2 at 17–18; 79-3; 79-4 at 1–10). She cites the following as evidence of her symptoms:

- Her deposition testimony that she was experiencing headaches at the time mold was found in her office (ECF 75-1 at 12–15);

- Medical records showing a diagnosis of allergic rhinitis as far back as 2006 and as recent as 2019 (ECF 79-2 at 17–18; 79-3; 79-4 at 1–10);

- A May 25, 2016 timeline constructed by Ho-Gland regarding Drerup's request to move to a different location once mold was found (ECF 75-2 at 168);

- A September 23, 2014 email from Chief Brock confirming mold was found in Drerup's office and stating Drerup was offered two other areas in which to work due to her concerns regarding the mold (ECF 76-2 at 5); and

- Brien Williams' affidavit stating there were mold issues in the fire department building in 2006 and one side of the men's sleeping quarters was blocked off due to mold (ECF 78-2 at 36).

(*See* ECF 83 at 44). Drerup claims this evidence demonstrates she "had difficulty breathing and was unable to breathe and have her respiratory and immune systems functioning as well as the average person in the general population including when exposed to the mold toxins in CNS' workplace." (*Id*.).

In its reply, CNS notes Drerup's Second Amended Complaint alleges a disability due to "migraine headaches and mold sensitivity." (ECF 87 at 19) (citing ECF 32 at 8). CNS argues even if the Court considers Drerup's new allegation of a disability due to allergic rhinitis, her claim fails because she has not shown her alleged allergic rhinitis substantially limits a major life activity. (*Id*. at 20). CNS cites *Milton v. Tex. Dep't of Criminal Justice* in support of its argument. (ECF 87 at 20) (citing *Milton*, No. CIV.A. H-10-303, 2011 WL 7640082, at *3 (S.D. Tex. Dec. 17, 2011) ("Brief coughing and shortness of breath caused by common odors do not rise to the level of impairment required to qualify as disabled under the [ADA]. Disabilities include uncontrolled epilepsy, cerebral palsy, and muscular dystrophy-not occasional or persistent allergic or asthmatic reactions.").

Breathing, functions of the immune system, and respiratory functions are major life activities. 29 C.F.R. § 1630.2(i)(1)(i)–(ii). However, the Court can find no specific mention of Drerup's immune system in the evidence Drerup cites in support of her argument. Further, the evidence Drerup cites states the following with respect to her ability to breathe and the functioning of her respiratory system:

- October 17, 2006 medical records state eye pain and eye redness were present, but post-nasal drainage, nasal congestion, rhinitis, sore throat, cough, dyspnea, sputum production, and wheezing were not present. (ECF 79-4 at 8). A chest and lung exam revealed "easy respiratory effort" and "equal breath sounds." (*Id*.).;

- September 22, 2010 medical records state a chest and lung exam revealed normal movements and normal breath sounds. (*Id*. at 7).;

- September 29, 2010 medical records state a chest and lung exam revealed normal movements and normal breath sounds. (*Id*. at 6).;

- June 15, 2012 medical records state a chest and lung exam revealed normal movements and normal breath sounds. (*Id*. at 4).;

- May 13, 2014 medical records state a chest and lung exam revealed normal movements and normal breath sounds. (*Id*. at 3).;

- July 9, 2014 medical records state a chest and lung exam revealed normal movements and normal breath sounds. (*Id*. at 2).;

- January 13, 2017 medical records state coughing, difficulty breathing, and chest pain were not present. (ECF 79-3 at 10).;

- February 6, 2017 medical records state Drerup complained of an upper respiratory infection, chills, nasal stuffiness, sinus pain, sore throat, hoarseness, cough, purulent sputum, and chest pain. (*Id*. at 9).; and

- December 12, 2017 medical records state Drerup complained of upper respiratory symptoms of coughing, headache, nasal congestion, sinus pain, sore throat, and ear pain. (*Id*. at 7).

In support of her argument, Drerup cites *Burnley v. City of San Antonio*, No. CIV.A.SA-02-CA0489NN, 2004 WL 298709 (W.D. Tex. Jan. 6, 2004). (ECF 83 at 44–45). In *Burnley*, the plaintiff was diagnosed with chronic rhinitis and provided evidence of possible permanent damage to lung function and capacity, as well as evidence of missed work. *Burnley*, No. CIV.A.SA-02-CA0489NN, 2004 WL 298709, at *4. The court found summary judgment inappropriate because a genuine issue of material fact existed regarding whether chronic rhinitis substantially limited the plaintiff's ability to breathe. *Id*.

Drerup's summary judgment evidence is unlike the evidence presented in *Burnley*. With respect to her ability to breathe, Drerup's summary judgment evidence shows, at best, a diagnosis of chronic allergic rhinitis beginning in 2006, which resulted in symptoms in February 2017 and December 2017. The evidence Drerup cites shows her symptoms included chills, nasal stuffiness and congestion, sinus pain, sore throat, hoarseness, cough, purulent sputum, chest pain,

headache, and ear pain. (ECF 79-3 at 7, 9). This evidence is far from similar to the evidence of possible permanent damage to lung function and capacity in *Burnley*. As evidenced by *Burnley*, Drerup is of course correct that a court in "[t]his circuit has held that chronic rhinitis impairs breathing and can constitute a disability under the ADA." (ECF 83 at 44). But Drerup "must prove a substantial limit with specific evidence that [*her*] *particular* impairment substantially limits [*her*] *particular* major life activity." *Waldrip v. Gen. Elec. Co.*, 325 F.3d 652, 656 (5th Cir. 2003). There are no per se disabilities under the ADA. *Id*.

Drerup also cites *O'Reilly v. Gov't of the V. I.*, No. CV 11-0081, 2015 WL 4038477 (D.V.I. June 30, 2015) in support of her argument. (ECF 83 at 45). In *O'Reilly*, the court found the plaintiff's "headaches and sinus problems, caused by a mold allergy, constitute a physiological condition affecting her respiratory and immune systems." *O'Reilly*, No. CV 11-0081, 2015 WL 4038477, at * 6. Not only is *O'Reilly* not binding on the Court, the *O'Reilly* court analyzed the issue in the context of a motion for judgment on the pleadings under the Rule 12(b)(6) standard. *Id*. at *1–2, 6. Thus, *O'Reilly* is procedurally distinguishable because the court did not apply summary judgment standards or analyze summary judgment evidence.

The Court finds the evidence Drerup cites does not raise a genuine issue of material fact regarding whether her ability to breathe or the functioning of her respiratory system were substantially limited. *See Robinson v. Glob. Marine Drilling Co.*, 101 F.3d 35, 36–37 (5th Cir. 1996) (finding asbestosis that reduced plaintiff's lung capacity to less than 50% and caused shortness of breath did not substantially limit plaintiff's breathing); *see also Spindle v. CKJ Trucking, L.P.*, No. 4:18-CV-818-SDJ-KPJ, 2020 WL 2482200, at *6 (E.D. Tex. Feb. 7, 2020) (finding evidence plaintiff suffered from "shortness of breath" insufficient to show plaintiff's breathing was substantially limited); *see also Butler v. Exxon Mobil Corp.*, 838 F. Supp. 2d 473, 487 (M.D. La. 2012) (finding allergy symptoms including throat soreness, watery eyes,

congestion, and sinus infections did not substantially limit any major life activity); *see also Lopez-Baca v. Geren*, 599 F. Supp. 2d 744, 754 (W.D. Tex. 2008) (finding "shortness of breath which require[d] [plaintiff] to try to catch his breath" insufficient to establish a substantial limitation of breathing); *see also Dixon v. Albemarle Corp.*, No. CIV.A. H-04-170, 2005 WL 1503470, at *5 (S.D. Tex. June 7, 2005) (finding plaintiff's "generalized incidents of chest congestion" and "breathing difficulty…insufficient to demonstrate a disability, because [plaintiff] failed to present any evidence of the extent of such limitations").

Because Drerup failed to show specific evidence creating a genuine issue of material fact on whether her chronic allergic rhinitis constitutes a disability under the ADA, the Court GRANTS CNS' motion for summary judgment on Drerup's ADA claims.[4]

### C. Title VII claims

CNS argues Drerup's Title VII claims fail because Drerup cannot establish a prima facie case of sex discrimination under Title VII. Specifically, CNS argues Drerup cannot show she suffered an adverse employment action, was qualified for the positions she sought, or that a causal connection between her sex and an adverse employment action exists. (ECF 64 at 41–42). CNS further claims "Drerup has no evidence, and only her own subjective belief, that those events occurred because of her sex." (*Id*. at 42).

In response, Drerup alleges the following adverse employment actions: "(1) failure to promote her to Battalion Chief; (2) delay in reclassifying Morgan's position; (3) filling Morgan's position with Brown; (4) failing to transition Drerup's job duties to Brown as approved by supervisors Ho-Gland[ and] Gleaves and [the] EC; and giving Brown numerous special project

---

[4] CNS seeks summary judgment on Drerup's TCHRA claims. (*See* ECF 64 at 20–21). TCHRA disability discrimination claims are analyzed under the same standard as ADA discrimination claims. *See Williams v. Tarrant Cty. Coll. Dist.*, 717 F. App'x 440, 444–45 (5th Cir. 2018). Thus, to the extent Drerup asserts disability discrimination claims under the TCHRA, the Court GRANTS summary judgment on these claims.

duties that were far more favorable and likely to lead to advancement."[5] (ECF 83 at 60). She also appears to argue she suffered an adverse employment action when she was not hired to the AFC position (*see id.*), and that male employees were treated better than her because:

- A male employee was allowed to work as a responder after failing the CC;

- A male employee who was not housed in the Fire Department worked as a responder; and

- A male outside the Fire Department was put on a contingency list to respond without passing the CC.

(*Id.* at 60–61).

"To demonstrate a prima facie case of employment discrimination, [a plaintiff] must show that she (1) belongs to 'a protected class'; (2) 'was qualified for the position'; (3) experienced 'an adverse employment action'; and (4) was 'similarly situated' to other employees who were not members of her protected class and who 'were treated more favorably.'" *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (quoting *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004)).

> To be "similarly situated," comparators must be "nearly identical." *Lee*, 574 F.3d at 260. They must have "held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories." *Id.* (footnotes omitted). "[C]ritically, the plaintiff's conduct that drew the adverse employment decision must have been 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions." *Id.* We have consistently "defined 'similarly situated' narrowly, requiring the employees' situations to be 'nearly identical.'" *West v. City of Houston*, 960 F.3d 736, 740 (5th Cir. 2020) (quoting *Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 406 (5th Cir. 2005)).

*Sacchetti v. Optiv Sec., Inc.*, 819 F. App'x 251, 254 (5th Cir. 2020).

---

[5] The Court assumes "EC" refers to Robin McLaurin. (*See* ECF 83 at 13) ("Drerup's complaint was escalated to Robin McLaurin ('McLaurin'), Manager Pantex Ethics and Employee Concerns ('EC'), the main EC contact for the FD.").

Because Drerup relies on circumstantial evidence to support her Title VII claims, it is properly analyzed under the *McDonnell Douglas* burden shifting framework. *Alvarado v. Tex. Rangers*, 492 F.3d 605, 611 (5th Cir. 2007). If the plaintiff establishes a prima facie case, "the burden of production shifts to the employer 'to articulate some legitimate, nondiscriminatory reason'" for the adverse employment action. *Rogers v. Pearland Indep. Sch. Dist.*, 827 F.3d 403, 408 (5th Cir. 2016) (quoting *McDonnell Douglas*, 411 U.S. at 802). If the defendant satisfies this burden, the plaintiff "must offer some evidence that the reason proffered was a pretext for discrimination, or that a 'motivating factor' for the employment decision was the plaintiff's protected characteristic." *Id.*

### i.   Drerup's claims that male employees were treated better than her

Drerup does not clearly allege in her briefing regarding her prima facie case of sex discrimination under Title VII that the male employees she compares herself to were similarly situated. (*See* ECF 83 at 60–61). The Court also notes it is not entirely clear what adverse employment action or actions Drerup attempts to address in claiming the male employees were treated better than her. Drerup appears to argue she was not allowed to act as a responder, but the alleged similarly situated male employees mentioned were allowed to act as responders. (*See id*.). Thus, the alleged adverse employment action at issue appears to be CNS' decision not to allow Drerup to act as a responder.

Drerup has not shown the male employees mentioned in the relevant portion of her briefing were similarly situated. She alleges two male employees were allowed to act as responders despite not passing the CC, and one male employee was allowed to act as a responder despite not being housed in the Fire Department. (*See id*.). However, she does not claim a male employee with circumstances nearly identical to her alleged previous circumstances—failure to pass the CC from 2015–2018, unable to enter the fire station, and only able to act as a responder

in a position away from flames and fire (*see id*. at 16, 20, 50–51)—was allowed to act as a responder. Nor does she claim a male employee with circumstances nearly identical to her alleged current circumstances—unable to enter the fire station and only able to act as a responder in a position away from flames and fire (*see id*. at 16, 20)—was allowed to act as a responder.

Even assuming Drerup could show the male employees were similarly situated, CNS argues Drerup is not qualified to act as a responder. (*See* ECF 64 at 26–31). For example, CNS cites evidence showing a responder must be able to address an emergency in an environment where respiratory irritants may exist (*id*. at 13–14) (citing ECF 65-1 at 301), and Drerup cannot be around smoke (*id*. at 29) (citing ECF 65-1 at 115). Drerup alleges she "could have been accommodated as a responder by being placed in the staging area away from the flames and fire." (ECF 83 at 20). She does not appear to argue she is qualified to act as a responder absent an accommodation. Because Drerup has not shown she has a disability under the ADA, she is not entitled to a reasonable accommodation. *Foreman v. Babcock & Wilcox Co.*, 117 F.3d 800, 805 (5th Cir. 1997) ("If [Plaintiff] is not disabled, he would not be entitled to a reasonable accommodation…").

To the extent Drerup attempts to establish a prima facie case of sex discrimination based on CNS' decision to allow male employees to act as a responder, while denying Drerup the same opportunity, Drerup's claim fails because she has not shown specific evidence creating a genuine issue of material fact on whether any of the male employees cited were similarly situated, or whether she was qualified to act as a responder.

> **ii.    Prima facie case with respect to CNS' decision not to offer Drerup the Battalion Chief position**

Drerup does not appear to dispute CNS' contention that the Battalion Chief position was eliminated and reclassified, and thus, nobody was selected for the position. (*See* ECF 64 at 16, 36; 83 at 53–54).

"To establish a claim for discriminatory failure to hire, a plaintiff must demonstrate that: (1) she was in the protected class; (2) she applied for and was qualified for the position sought; (3) she was not selected; and (4) after her rejection, another applicant not from the protected class was hired." *Scott-Benson v. KBR, Inc.*, 826 F. App'x 364, 368 (5th Cir. 2020).

Drerup cannot establish a prima facie case with respect to this claim because she has failed to show specific evidence creating a genuine issue of material fact on whether anyone, much less an applicant not from the protected class, was hired to the Battalion Chief position after she was not selected. Further, CNS argues Drerup did not apply for the Battalion Chief position (*see* ECF 64 at 36), and Drerup does not argue she applied for the position in the relevant portions of her briefing.

### iii.    Prima facie case with respect to CNS' decision to reclassify the Battalion Chief position and hire Brown to the reclassified position

As previously stated, the Court finds Drerup's claims based on CNS' reclassification of the Battalion Chief position to a Fire Captain position are barred. The Title VII section of Drerup's response summarily addresses her prima facie case with respect to CNS' decision to hire Brown to the reclassified position. (*See* ECF 83 at 60). However, Drerup addresses CNS' decision to hire Brown to the reclassified position in the ADA section of her response. Drerup states the following regarding her claim that she suffered an adverse employment action when Brown was hired to the reclassified position:

> On November 13, 2017, CNS posted Morgan's downgraded position of Compliance Captain (App. 53-54; 639). Drerup filed a formal employee concern on November 27, 2017 complaining that she had not been advised about the postings, and about the downgrade of Morgan's position. (App. 704). Drerup reported ongoing retaliation while the "good ole' boys in the FD continue to flourish." (App. 704). On December 18, 2017, CNS documented the formal change in the position from BC to Captain and on February 12, 2018, CNS announced that Brown, then age 40, was promoted to Compliance Captain. (App. 269; 54; 438; 649; 156; 407; 906). Drerup had more overall experience in the FD than Brown and had already been a captain for eight years, while Brown had no experience in compliance. (App. 438-439; 220).

(*Id*. at 56). Drerup does not allege she applied for the reclassified position, and her own briefing indicates she knew about the position's posting more than two months before the position was filled. Drerup cannot establish a prima facie case with respect to this claim because she has failed to show specific evidence creating a genuine issue of material fact on whether she applied for the reclassified position, and thus, whether she suffered an adverse employment action. *See Rodriguez v. Brownsville Indep. Sch. Dist.*, 739 F. App'x 227, 231 (5th Cir. 2018) (finding failure to promote plaintiff was not adverse employment action under ADA because plaintiff did not apply for promotion); *see also Kolpakchi v. Principi*, 113 F. App'x 633, 638 (5th Cir. 2004) ("[Plaintiff] did not apply for the position and thus cannot make out a prima facie case of employment discrimination.").

### iv.   Prima facie case with respect to CNS' decision not to switch Drerup and Brown's duties

CNS argues Drerup's claim regarding its decision not to switch Drerup and Brown's duties fails because Brown's Fire Captain position did not offer more compensation, overtime, training, or travel opportunities than Drerup's Fire Captain position. (ECF 64 at 37–38). CNS further argues "Drerup repeatedly contends without evidence that the transition of her duties to Brown, and Brown's duties to her, would have constituted a 'move up' for her…" (*Id*. at 37).

In response, Drerup argues CNS initially agreed to "transition her document duties to Brown in order to broaden her horizons and take over special projects and new opportunities." (ECF 83 at 56). However, Chief Brock refused to allow the transition. (*Id*. at 56–57). Drerup argues "[t]he fact that [Brown's] duties were more prestigious is supported by the fact that they had previously been performed by a [Battalion Chief], that Gleaves and Ho-Gland agreed to let Drerup take over those duties in response to her complaints, and that Chief Brock refused to allow Drerup this opportunity." (*Id*. at 57).

20

Both parties cite *Alvarado v. Texas Rangers*. The Fifth Circuit Court of Appeals held in *Alvarado* that "the denial of a transfer *may* be the objective equivalent of the denial of a promotion, and thus qualify as an adverse employment action, even if the new position would not have entailed an increase in pay or other tangible benefits; if the position sought was objectively better, then the failure to award the position to the plaintiff can constitute an adverse employment action." *Alvarado*, 492 F.3d at 614. The court further stated:

> In determining whether the new position is objectively better, a number of factors may be relevant, including whether the position: entails an increase in compensation or other tangible benefits; provides greater responsibility or better job duties; provides greater opportunities for career advancement; requires greater skill, education, or experience; is obtained through a complex competitive selection process; or is otherwise objectively more prestigious.

*Id*. "This is an objective inquiry; neither the employee's subjective impressions as to the desirability of the new position nor the employee's idiosyncratic reasons for preferring the new position are sufficient to render the position a promotion." *Id*.

The evidence Drerup cites in support of her argument shows only that Drerup subjectively believed Brown's Fire Captain duties were more prestigious than her own. Drerup cites her own deposition testimony stating Brown "was given I believe a position that was more prestigious than mine, it was a communications and compliance, and he has been allowed to travel. He's been paid overtime." (ECF 75-1 at 41).

However, Drerup also cites a portion of Daniel Gleaves' ("Gleaves"), Director of Emergency Services, testimony where he was asked: "…Ms. Drerup indicates in there that she had discussed with you, and you agreed, that [Brown] should take her -- her duties so she could move up in compliance. Is that a fair statement of the conversation you had with Ms. Drerup?" (ECF 74 at 61). Gleaves responded in part: "The piece of this that I'm not quite, I guess, lining up with is move up in compliance. There is no -- all day captains are on the same level. There's no moving up or moving down." (*Id*.). Further, Drerup cites a portion of Chief Brock's deposition

21

testimony where he was asked: "In regard to any job duties of Ms. Drerup that you approved of her transferring to Mr. Brown, what would those have been?" (ECF 75 at 13). Chief Brock responded: "I don't recall the specifics of which duties were -- were discussed. There were duties that it really doesn't make any difference who does them. There are other duties that need to be done by somebody in the department seeing the work." (*Id*.). In another exchange during Chief Brock's testimony, which Drerup cites, counsel asks: "Ms. McLaurin indicates that job duties would be transitioned from Ms. Drerup to Mr. Brown so that she could take on some duties that she found more desirable; is that correct?" (*Id*. at 18). Chief Brock responded in agreement stating "[t]hat's what the memo says." (*Id*.). Drerup also cites Pantex Ethics and Employee Concerns Manager Robin McLaurin's deposition testimony stating:

> We did try and address Ms. Drerup's concerns about her work assignments. They are all captains: She's a captain, Fox is a captain, Mr. Brown is a captain. So it's a matter of work assignment. And I understand that she wanted to do something different, and we were trying to accomplish that. It sounds like, you know, we didn't accomplish it, but we were trying to accomplish her to do something different that she desired to do.

(ECF 75-2 at 140).

Drerup cannot establish a prima facie case with respect to this claim because she has failed to show specific evidence creating a genuine issue of material fact on whether CNS' decision not to switch Drerup and Brown's duties constitutes an adverse employment action.

### v. Prima facie case with respect to CNS' failure to hire Drerup to the AFC position

CNS argues its decision not to hire Drerup to the AFC position does not constitute sex discrimination because she was not qualified for the position. (ECF 64 at 32, 41–42). CNS cites evidence to show an individual qualified for the AFC position must have the ability to be physically present at the fire station. (*Id*. at 33–34) (citing ECF 65-1 at 39–41).

Drerup does not appear to dispute that an individual qualified for the AFC position must have the ability to be physically present at the fire station. In response, Drerup argues she "could perform the essential job functions of the position without going into the [fire station] if given reasonable accommodation." (ECF 83 at 53). She claims she could attend meetings held at the fire station by phone. (*Id*.). She does not appear to argue she is qualified for the AFC position absent an accommodation. Because Drerup has not shown she has a disability under the ADA, she is not entitled to a reasonable accommodation. *Foreman*, 117 F.3d at 805.

Drerup cannot establish a prima facie case with respect to this claim because she has failed to show specific evidence creating a genuine issue of material fact on whether she was qualified for the AFC position.

Because Drerup has failed to establish a prima facie case of sex discrimination, the Court GRANTS CNS' motion for summary judgment on Drerup's Title VII claims.[6]

**D. ADEA claims**

CNS argues Drerup's ADEA claims fail because Drerup cannot establish a prima facie case of age discrimination under the ADEA. (ECF 64 at 44–46). In response, Drerup argues she can establish a prima facie case of age discrimination. To do so, she relies on the same arguments and evidence submitted in support of her Title VII claims. (*See* ECF 83 at 60–61) (addressing prima facie case of sex and age discrimination in same section of briefing).

As stated above, Drerup has not established a prima facie case of sex discrimination based on: (1) CNS' decision not to offer Drerup the Battalion Chief position; (2) CNS' decision to reclassify the Battalion Chief position and hire Brown to the reclassified position; (3) CNS'

---

[6] CNS seeks summary judgment on Drerup's TCHRA claims. (*See* ECF 64 at 20–21). TCHRA sex discrimination claims are analyzed under the same standard as Title VII sex discrimination claims. *See Dudik v. Mesquite Rodeo*, No. CIV.A.3:03-CV-0178-M, 2004 WL 524947, at n.3 (N.D. Tex. Mar. 12, 2004). Thus, to the extent Drerup asserts sex discrimination claims under the TCHRA, the Court GRANTS summary judgment on these claims.

decision not to switch Drerup and Brown's duties; or (4) CNS' failure to hire Drerup to the AFC position. The deficiencies in Drerup's arguments with respect to her Title VII claims, noted above, are equally dispositive of her ADEA claims.[7]

Because the deficiencies in Drerup's arguments with respect to her Title VII claims, noted above, are equally dispositive of her ADEA claims, Drerup has failed to establish a prima facie case of age discrimination under the ADEA. Thus, the Court GRANTS CNS' motion for summary judgment on Drerup's ADEA claims.[8]

### E. Retaliation claims

CNS argues Drerup's retaliation claims fail because Drerup cannot establish a prima facie case of retaliation. Specifically, CNS argues Drerup cannot show she suffered an adverse employment action, or that a causal connection exists between a protected activity and an adverse employment action. (*See* ECF 64 at 48–51). In response, Drerup argues she can establish a prima facie case of retaliation. The relevant portion of Drerup's briefing addresses only retaliation under Title VII. (*See* ECF 83 at 68–70).

---

[7] "To make out a prima facie case of discriminatory treatment based on age, [a plaintiff is] required to prove: (1) they are within the protected class; (2) they are qualified for the position; (3) they suffered an adverse employment decision; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (i.e., suffered from disparate treatment because of membership in the protected class)." *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003).

The Court acknowledges Drerup's briefing regarding her ADEA claims states "substantially younger" employees were treated better than her. (*See* ECF 83 at 62–65). However, these arguments are made in the context of pretext. Pretext becomes relevant only after a plaintiff has established a prima facie case of age discrimination. *See Powell v. Dall. Morning News L.P.*, 776 F. Supp. 2d 240, 267–69 (N.D. Tex. 2011) ("The Court uses a three-step process to evaluate ADEA claims at the summary judgment stage…First, the plaintiff must establish a *prima facie* case of discrimination…Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action…Finally, the burden shifts back to the plaintiff who must show that the defendant's proffered reason is merely a pretext for age discrimination.") (internal quotation and citation omitted).

[8] CNS seeks summary judgment on Drerup's TCHRA claims. (*See* ECF 64 at 20–21). TCHRA age discrimination claims are analyzed under the same standard as ADEA discrimination claims. *See Acker v. Deboer, Inc.*, 429 F. Supp. 2d 828, 847 (N.D. Tex. 2006). Thus, to the extent Drerup asserts age discrimination claims under the TCHRA, the Court GRANTS summary judgment on these claims.

The following framework applies to Plaintiff's Title VII retaliation claim:

> Under the *McDonnell Douglas* framework, a plaintiff bears the initial burden to show: "(1) that [she] engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action." *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003) (internal quotations and citations omitted). We have interpreted Title VII's opposition clause to mean that a plaintiff engages in protected activity when she complains of an employment practice that she "reasonably believes" violated Title VII. *EEOC v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016). If an adverse employment action occurs within close temporal proximity to protected activity known to the employer, a plaintiff will have met her burden to establish a prima facie case of retaliation. *See Garcia v. Prof'l Contract Servs., Inc.*, 938 F.3d 236, 243 (5th Cir. 2019).
>
> Once the plaintiff meets her initial burden, the burden shifts to the employer "to articulate some legitimate, nondiscriminatory reason" for its actions. *See McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. 1817. If the employer proffers a legitimate, nondiscriminatory reason, the burden then returns to the plaintiff to prove that the employer's reason is pretext for unlawful discrimination. *See Septimus v. Univ. of Houston*, 399 F.3d 601, 607 (5th Cir. 2005). At the pretext stage, the plaintiff must offer evidence "that the adverse action would not have occurred but for [her] employer's retaliatory motive." *See Feist v. La., Dep't of Justice Office of the Att'y Gen.*, 730 F.3d 450, 454 (5th Cir. 2013). "[T]he combination of suspicious timing with other significant evidence of pretext ... can be sufficient to survive summary judgment." *Shackelford v. Deloitte & Touche, LLP*, 190 F.3d 398, 409 (5th Cir. 1999).

*Badgerow v. REJ Props. Inc.*, 974 F.3d 610, 618–19 (5th Cir. 2020). An adverse employment action for purposes of establishing a prima facie case of retaliation is one that "a reasonable employee would have found [to be] materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (internal quotations and citations omitted).

With respect to the second element of her retaliation claim, Drerup states only, "[a]s noted *supra*, Drerup experienced numerous adverse actions that she relies on in asserting a claim of retaliation." (ECF 83 at 70). Thus, Drerup appears to rely on the same alleged adverse employment actions submitted in support of her ADA, Title VII, and ADEA claims. (*See id.* at 53–59, 60–61).

Those alleged adverse employment actions are: "(1) failure to promote her to Battalion Chief; (2) delay in reclassifying Morgan's position; (3) filling Morgan's position with Brown; (4) failing to transition Drerup's job duties to Brown as approved by supervisors Ho-Gland[ and] Gleaves and [the] EC; and giving Brown numerous special project duties that were far more favorable and likely to lead to advancement." (*Id*. at 60). Drerup also appears to argue she suffered adverse employment actions when she was not hired to the AFC position and not to allowed to act as a responder. (*See id*. at 60–61).

As previously stated, the Court finds Drerup's claims based on CNS' reclassification of the Battalion Chief position to a Fire Captain position are barred. Additionally, the Court finds Drerup failed to show specific evidence creating a genuine issue of material fact on whether CNS' decision not to switch Drerup and Brown's duties constitutes an adverse employment action for purposes of her retaliation claim.[9]

The Court finds Drerup's retaliation claims based on the remaining alleged adverse employment actions also fail. Drerup's claim regarding CNS' decision to hire Brown to the reclassified position fails because she does not even allege she applied for the reclassified position. *Magiera v. City of Dallas*, 389 F. App'x 433, 438 (5th Cir. 2010) ("[A]lthough being denied lateral transfer opportunities and overtime assignments could be a materially adverse action, Magiera

---

[9] As previously stated in its analysis of Drerup's Title VII claims, the Court finds Drerup failed to show specific evidence creating a genuine issue of material fact on whether CNS' decision not to switch Drerup and Brown's duties constitutes an adverse employment action. The Court acknowledges that, unlike the adverse employment action inquiry for a Title VII discrimination claim, in order for an action to be adverse for purposes of a retaliation claim, the plaintiff must only show a reasonable employee would have found the challenged action materially adverse. *Burlington*, 548 U.S. at 68. However, whether something constitutes a materially adverse employment action is still an objective inquiry. *Id*. at 68–69. As the Court previously discussed when analyzing Drerup's Title VII claims, the evidence Drerup cites shows only that Drerup subjectively believed Brown's Fire Captain duties were more prestigious than her own. *See Aryain v. Wal-Mart Stores Tex. LP*, 534 F.3d 473, 485 (5th Cir. 2008) ("Aryain's deposition testimony indicates that she would have preferred to have been transferred to the lawn and garden department, sporting goods, or to a front-end cashier's job. However, Aryain's subjective preference for a different position cannot make her transfer to the infant department a materially adverse action.").

produced no evidence regarding the positions that she applied for, [or] the dates that she submitted applications…").

Additionally, even assuming Drerup established a prima facie case of retaliation, her claims with respect to two of the remaining alleged adverse employment actions—CNS' decision not to hire her to the AFC position or allow her to act as a responder—fail. CNS cited evidence showing Drerup was not qualified for the positions, and Drerup does not allege she was qualified for the positions without a reasonable accommodation. Because Drerup has not shown she has a disability under the ADA, she is not entitled to a reasonable accommodation. *Foreman*, 117 F.3d at 805. Thus, the summary judgment evidence shows a legitimate nondiscriminatory reason for CNS' decision not to hire her to the AFC position or allow her to act as a responder. *See Gonzalez v. Carlin*, 907 F.2d 573, 578 (5th Cir. 1990) ("Assuming *arguendo* that Gonzalez made out a prima facie retaliation case, the fact that he failed to qualify for the position in question rebutted any presumption of retaliation and constituted a reasonable, nondiscriminatory reason for the Postal Service's rejection of his application.").

With respect to her claim regarding CNS' decision not to offer her the Battalion Chief position, Drerup does not clearly allege the date of the decision. CNS cites evidence showing the position was eliminated shortly before Morgan's November 15, 2016 retirement. (ECF 64 at 36) (citing ECF 65-1 at 76–77). In the relevant portion of her briefing, Drerup alleges numerous instances of protected activity. Only seven of those alleged instances of protected activity occurred before November 15, 2016. (*See* ECF 83 at 69–70). Only these seven alleged instances of protected activity that occurred before November 15, 2016 could possibly sustain Drerup's retaliation claim regarding CNS' decision not to offer her the Battalion Chief position. *See Nowlin v. Resolution Tr. Corp.*, 33 F.3d 498, 507 (5th Cir. 1994) (stating a retaliation claim requires "an adverse employment action following the protected activity…").

Drerup alleges Chief Brock was the decision maker with respect to the alleged adverse employment actions she suffered. (ECF 83 at 71). However, the evidence Drerup cites states Gleaves, not Chief Brock, would be "evaluating Morgan's [Battalion Chief] position" and "determine what job level will be posted based on future needs." (ECF 77-1 at 6). Regardless, even assuming Chief Brock was the decision maker, the evidence Drerup cites with respect to six of the seven alleged instances of protected activity that occurred before November 15, 2016 does not show Chief Brock was aware Drerup engaged in any activity protected by Title VII. *See Garcia*, No. 2:18-CV-95-Z-BR, 2020 WL 4208060, at *13 (quoting *McLaurin v. City of Jackson Fire Dep't*, 217 F. App'x 287, 288 (5th Cir. 2006)) ("To establish a causal connection, a plaintiff must first show that the decision maker was aware of the protected activity."). In fact, a portion of the relevant evidence Drerup cites actually states Chief Brock had not been made aware of her complaints as of July 29, 2016. (*See* ECF 77-1 at 6).

Drerup cites evidence showing she reported a sexual assault incident to Chief Brock in 2008. (*See* ECF 83 at 69) (citing ECF 80-1 at 3). She asserts the "close temporal proximity of [her] complaints [and the alleged adverse employment actions] provide the 'causal connection' required to make out a prima facie case of retaliation." (*Id*. at 72). However, Drerup reported the sexual assault to Chief Brock approximately eight years before the Battalion Chief position was eliminated rather than offered to her. The Fifth Circuit has stated a plaintiff alleging retaliation can satisfy the causal connection element by showing close timing between the protected activity and the adverse employment action, but the temporal proximity must be "very close." *See Feist v. La., Dep't of Justice Office of the Att'y Gen.*, 730 F.3d 450, 454–55 (5th Cir. 2013) (noting the court has found a five-month gap insufficient). Drerup cites no authority to support a finding that an approximate eight-year gap between protected activity and an adverse employment action is sufficiently close timing to satisfy the causal connection element.

For these reasons, the Court GRANTS CNS' motion for summary judgment on Drerup's retaliation claims.[10]

Having considered CNS' Motion for Summary Judgment (ECF 63), the Court GRANTS the motion.[11]

IT IS SO ORDERED.

ENTERED May 14, 2021.

LEE ANN RENO
UNITED STATES MAGISTRATE JUDGE

---

[10] CNS seeks summary judgment on Drerup's TCHRA claims. (*See* ECF 64 at 20–21). To the extent Drerup asserts retaliation claims under the TCHRA, the Court GRANTS summary judgment on these claims. *See Dudik*, No. CIV.A.3:03-CV-0178-M, 2004 WL 524947, at n.3 (analyzing plaintiff's retaliation claims under Title VII and finding "to the extent…summary judgment is appropriate under Title VII, it is also appropriate under the TCHRA").

[11] CNS' Motion to File Under Seal (ECF 88) requests leave to file under seal its objections to Drerup's evidence filed in support of her response to the Motion for Summary Judgment. The Court will address CNS' Motion to File Under Seal (ECF 88) by separate order. However, out of an abundance of caution, the Court notes that even if it granted CNS' Motion to File Under Seal (ECF 88), such that CNS' objections to Drerup's evidence were before the Court, CNS' objections would be moot because CNS is entitled to summary judgment even considering the objected-to portions of Drerup's evidence. *See Banks v. Bell Helicopter Textron, Inc.*, No. 4:10-CV-653-Y, 2011 WL 13291576, at *4 (N.D. Tex. Nov. 4, 2011) ("Bell also raises objections to Banks's summary-judgment evidence. But because Bell is entitled to judgment as a matter of law even considering the objected to evidence, the Court overrules Bell's objections as moot."); *see also Carlton v. Fearneyhough*, No. CIVA 4:05CV711 Y, 2007 WL 891249, at *4 n.5 (N.D. Tex. Mar. 22, 2007) ("Because Fearneyhough is entitled to summary judgment even considering the objected-to portions of Carlton's summary-judgment evidence, the Court DENIES Fearneyhough's motion to strike as moot."); *see also Hill v. Baylor Univ. Med. Ctr.*, No. CIV.A.3:96-CV-1862-G, 1997 WL 538738, at *9 n.6 (N.D. Tex. Aug. 22, 1997) ("However, even if the court considers these portions of Hill's affidavit as well as the other evidence to which Baylor objects in its motion to strike, it nevertheless concludes that Hill has failed to raise a genuine issue of material fact on her Title VII claims. Accordingly, Baylor's motion to strike is DENIED as moot.").